[Cite as *State v. Soliday*, 2012-Ohio-4481.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 2011CA00280 |
| ANDREW J. SOLIDAY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2011CR1239


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      September 24, 2012


APPEARANCES:

For Appellant:                      For Appellee:

GEORGE URBAN                        JOHN D. FERRERO, JR.
116 Cleveland Ave. NW, Suite 808    STARK COUNTY PROSECUTOR
Canton, OH 44702                    RENEE M. WATSON
                                    110 Central Plaza South, Suite 510
                                    Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant Andrew J. Soliday appeals from the judgment entries of conviction and sentence entered in the Stark County Court of Common Pleas. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on August 14, 2011 in the 1600 block of Bryan Ave. S.W. where appellant struck victim Tiffany Trescott with his vehicle and dragged her down the road.  Tiffany later died of her injuries.

### *Altercation at the Voodoo Bar*

{¶3}   Tiffany was married to Joshua Trescott.  On the evening of August 14, they planned to go out with friends to celebrate an impending move out-of-state. Together with their friends Lindsey Cathey, Charity Slaton (sister of Joshua Trescott), Bianca Harper, and Chris Scott, the Trescotts rode together to "the Voodoo," a bar on Navarre Road S.W. The bar was a short distance from the Trescotts' residence on Bryan Ave. S.W.

{¶4}   While at the bar, Charity Slaton met appellant and his friend Karrenton Ridley.  Charity and appellant danced together and appellant commented to Joshua Trescott that he liked his sister.  Lindsey Cathey later testified appellant and Ridley tried to get Cathey and Charity Slaton to come home with them but the women refused, leading to a dispute between appellant, Ridley, and the Trescott group.

{¶5}   Chris Scott and Ridley got into a fight and Scott punched Ridley.  After the punch, both groups were led out of the bar by security staff.

{¶6}   Appellant would later claim he and Charity made plans to "hook up" later after she drove home with the Trescotts, but Charity denied making plans with appellant.  Lindsay Cathey also denied making any plans to meet appellant and Ridley later.

{¶7}   In the bar parking lot, appellant approached Joshua Trescott and tried to shake his hand.  Trescott said "Let it go, we'll talk later."  Security personnel called by appellee at trial noted appellant kept apologizing to the Trescott group, but Ridley was more upset and threatening, stating he was going to "take care of this later."

{¶8}   Joshua Trescott said "Everyone who came here with me, leaves with me," and the group got back into their vehicle. The group headed back in the direction of the Trescott residence with Tiffany driving.

*Appellant Follows the Trescott Group Home*

{¶9}   When they stopped at a stop sign, Joshua Trescott noticed a car coming up behind them, a Chevy Blazer or Jimmy, but didn't recognize the car.  Tiffany pulled their vehicle partly into their driveway and jumped out, yelling because the other vehicle almost struck them.

{¶10} The other vehicle now pulled alongside the Trescott vehicle.   Its occupants were appellant, who was driving, and Ridley, who had earlier fought with Chris Scott.

{¶11} Tiffany walked over to appellant's car, slammed her hands on the hood, and said something to the effect of "Are you kidding me?"  The rest of the Trescott group got out of their vehicle.  Chris Scott opened appellant's car door and began

punching appellant. Tiffany went around the front of appellant's vehicle to try to stop him, yelling "No, Chris, don't." Ridley was also punched.

*Appellant Hits the Gas and Strikes Tiffany Trescott*

{¶12} When Tiffany was in front of appellant's vehicle, he hit the gas. Everyone was screaming. Appellant drove a short distance down the road with Tiffany on the front of the truck. Appellant stopped and then drove forward again, dragging Tiffany down the street. Her husband and friends ran after the truck, screaming for appellant to stop. Appellant struck a depression in the brick roadway and Tiffany came out from under the truck, into the roadway.

{¶13} Tiffany lay writhing in the roadway. Her friends told her to lie still until help could arrive. Someone in the Trescott group called 911.

{¶14} Appellant stopped at the stop sign at the end of the road and then drove off. He did not return to the scene. John Trescott and Chris Scott jumped into separate vehicles and drove off to look for appellant but did not find him.

*The Neighbor's Account*

{¶15} Tabitha Martin is a neighbor of the Trescotts and was not involved in the incident. She was awakened late at night on August 14 by yelling in the street. She looked out her window and saw a black vehicle with someone standing in front of it. As she lay back down, she realized the vehicle had struck the person in front of it, and she looked back out the window in time to see the vehicle stop, peel out, and drive forward again. Martin testified the victim was under the vehicle because as the vehicle drove down the street, she saw the victim roll out from underneath it.

*Investigation and Autopsy*

{¶16} Ptl. David Grant was dispatched to the scene and discovered Tiffany in the middle of the roadway, conscious but nonresponsive. Ptl. Grant recovered a muffler from the roadway as evidence. No other vehicle parts were present; and there were no skid or tire marks.

{¶17} The autopsy of Tiffany Trescott revealed she was 5'4 and weighed 250 pounds. She had significant external injuries consistent with a vehicle-pedestrian collision: abrasions, scrapes, and a fractured leg. The pathologist noted parallel marks on the victim's skin indicating a car had rolled over her. Tiffany's internal injuries included damaged organs and fractured ribs. She also suffered a pulmonary contusion and bleeding in her pelvis. The pathologist noted her internal injuries were consistent with the wheel of a vehicle rolling over her. Her specific cause of death was multiple blunt-impact injuries to the head, neck, and extremities as a result of being struck and run over by a motor vehicle.

{¶18} The muffler from the vehicle driven by appellant was tested for physical evidence. Personnel from the Stark County Crime Lab discovered human hair and traces of D.N.A. belonging to Tiffany Trescott on the muffler.

{¶19} Detectives from the Canton Police Department investigated the incident. Detectives met with witnesses at Aultman Hospital and took their statements; the Trescott group identified appellant as the suspect and provided his cell phone number. Detectives did not find appellant at his residence but did locate the Chevy Blazer he drove the night of the incident. Its muffler was missing and there was an indentation in the windshield.

{¶20} Detectives also checked appellant's driving status through the Bureau of Motor Vehicles and discovered his license was suspended. He had no driving privileges on August 14, 2011.

*Appellant's Account*

{¶21} Appellant testified in his own defense at trial. He admitted he never obtained a driver's license and had no privileges to drive on the night of August 14, 2011. Nevertheless, he drove a 1988 Chevy Blazer he was allegedly buying from a friend. Appellant and his friend Ridley went to the Voodoo bar and met Charity Slaton; the two danced together and appellant intended to go home with her. Appellant claimed he asked Charity's brother, John Trescott, if he could take Charity home and Trescott said no. Charity then allegedly told appellant to follow the group home.

{¶22} Appellant said he was "scared" but nonetheless followed the group home with the intention of picking up Charity. He saw the Trescott vehicle pull partway into the driveway, and then he saw the reverse lights come on as though the vehicle was backing up. At that point, Chris Scott and John Trescott got out of the vehicle and came over to appellant's truck. Appellant said they were there to pick up Charity, but Trescott and Scott allegedly punched appellant and Ridley repeatedly through the open windows of the vehicle.

{¶23} Appellant said the Trescott group was screaming "We're going to kill you," and Ridley told him to take off. He claimed Ridley screamed "Go, bro, go, bro." When someone opened appellant's door to pull him out of the vehicle, appellant hit the gas and took off.

{¶24} Appellant claimed he drove straight to the stop sign, stopped, looked, and turned left. He drove home without incident, spoke to his roommate, and went to sleep, completely unaware he struck anyone with his vehicle.

{¶25} When appellant received calls from Canton Police stating there had been an accident, he thought the Trescott group was trying to "lure" him out to continue the fight. He finally made contact with a detective and when he learned someone had been hurt, said he would obtain counsel and turn himself in.

{¶26} Appellant insisted he did not follow the Trescott vehicle that night looking for a confrontation. He never saw anyone fly over the hood of the truck and was not aware he struck anyone. He said the indentation in the Blazer's windshield was already there before the incident and he had looked the vehicle over and saw no sign he struck anyone.

*Indictment, Trial, Conviction, and Sentence*

{¶27} Appellant was charged by indictment with one count of aggravated vehicular homicide [R.C. 2903.06(A)(2)(a)]; one count of failure to stop after an accident [R.C. 4549.02]; and one count of driving under suspension [R.C. 4510.11(A)]. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant moved for judgment of acquittal at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled.

{¶28} Appellant was found guilty as charged. The trial court sentenced appellant to a prison term of eight years on the count of aggravated vehicular homicide and two terms of six months each on the counts of driving under suspension and failing to stop after an accident.

{¶29} Appellant now appeals from the judgment entries of his conviction and sentence.

{¶30} Appellant raises two Assignments of Error:

{¶31} "I. APPELLANT'S CONVICTIONS WAS *(sic)* AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶32} "II. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF *(sic)* ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

I.

{¶33} In his first assignment of error, appellant claims his convictions for aggravated vehicular homicide and failure to stop after an accident are against the manifest weight and sufficiency of the evidence. We disagree.

{¶34} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶35} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶36} Appellant was convicted of one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(2)(a) which states in pertinent part: "No person, while operating * * * a motor vehicle, * * * shall cause the death of another * * * recklessly."

{¶37} Appellant's argument is premised upon the element of recklessness. He asserts the evidence is insufficient to establish he acted with the requisite mental state of recklessness, defined in R.C. 2901.22(C) as follows: "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶38} Appellant argues he was being attacked by the Trescott group when he stepped on the gas, and the death of Tiffany Trescott was therefore accidental. However, even assuming appellant was assaulted by one or more members of the Trescott group after they pulled alongside the Trescott vehicle, appellant was in a situation of his own creation. As the driver of the vehicle, without driving privileges, he followed the Trescott group home under incendiary circumstances. Appellant was the only witness to insist his intention was merely to "hook up" with one of the women in the group. Other witnesses testified no such plans existed, and moreover that appellant's passenger had made threatening comments in the bar parking lot.

{¶39} Nevertheless, once appellant was at the scene on Bryan Avenue, he chose to hit the gas and drive forward when at least one person was in the immediate vicinity of his vehicle. Appellant testified he drove away with his hands over his face. Even by that admission appellant's conduct was reckless. While appellant insists he never saw Tiffany and did not realize he struck her, we conclude the jury could reasonably find otherwise. Appellant didn't strike the victim once and drive off; the physical evidence, and testimony of eyewitnesses, established he knocked her down, she was caught under the vehicle, and he actually drove over her.

{¶40} The record is replete with evidence of appellant's recklessness. Appellant's conviction for aggravated vehicular homicide is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶41} Appellant similarly argues his conviction for failure to stop after an accident is not supported by sufficient evidence and is against the manifest weight of the evidence essentially because appellant did not know he struck anyone and even if

he did know, Chris Scott and Joshua Trescott were pursuing him and he couldn't be expected to stop.

{¶42} To prove appellant failed to stop after an accident, appellee was required to prove that while driving a motor vehicle, appellant was involved in a collision involving persons or property and having knowledge of the collision, failed to immediately stop and remain at the scene, to provide his information to any person injured, and failed to immediately notify the nearest police authority. R.C. 4549.02.

{¶43} Appellant points to no specific evidence in the record to establish the jury lost its way, nor does he identify how appellee's evidence of failure to stop after an accident was insufficient. His inference that he was unaware he struck the victim is not credible in light of the fact that the victim was 5'4, weighed 250 pounds, and suffered rollover injuries. Even if appellant was aware of the collision but was afraid to stop because of threats by the Trescott group, he does not explain why he failed to report the collision to the nearest police authority. In short, we have reviewed the record and find appellant's conviction for failure to stop after an accident is fully supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶44} Appellant's first assignment of error is therefore overruled.

II.

{¶45} In his second assignment of error, appellant claims he received ineffective assistance of trial counsel. We disagree.

{¶46} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently.

*See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶47} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶48} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶49} Appellant asserts defense trial counsel was ineffective for failing to request a jury instruction of self-defense. Under Ohio law, self-defense is an affirmative defense. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). A defendant must meet the burden of going forward with evidence of a nature and quality sufficient to raise an affirmative defense. See R.C. 2901.05; *State v. Cross*, 58 Ohio St.2d 482, fn. 5, 391 N.E.2d 319 (1979); *State v. Abner*, 55 Ohio St.2d 251, 379 N.E.2d 228 (1978). The trial court, as a matter of law, cannot give a jury instruction on an affirmative defense if a defendant fails to meet this burden. See

*Cross* at fn. 5; *Abner* at 253-254, 379 N.E.2d 228; *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978).

{¶50} Defendants asserting self-defense must establish specific elements.  In *Williford,* the Ohio Supreme Court held:

> To establish self-defense, the defendant must show ' * * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * * ' The defendant is privileged to use that force which is reasonably necessary to repel the attack. 'If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense.' (Citations omitted and emphasis in original.)
>
> *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990).

{¶51} In the instant case, an instruction on self-defense would have been inconsistent with appellant's defense as we understand it from the record.  Appellant testified on his own behalf and claimed to have no knowledge whatsoever that he struck and dragged Tiffany Trescott.  He claimed his act of stepping on the gas and driving away from the scene was in response to Ridley's yelling "Go, bro, go" and both of them being pummeled by members of the Trescott group.  Appellant does not explain how the elements of self-defense apply to this scenario, other than to say appellant was not at fault in creating the situation.  We disagree with this premise because it was appellant who followed the group to their residence and pulled in

alongside their vehicle. Moreover, when he stepped on the gas, by his testimony appellant was escaping the situation, not using his vehicle as force reasonably necessary to repel the attack.

{¶52} Appellant failed to meet his burden to show evidence of possible self-defense. Having failed to meet this burden, the trial court had no basis to give an instruction on self-defense even if appellant's counsel had requested it. Therefore, counsel did not err in failing to request a jury instruction on self-defense because there was insufficient evidence to merit such a request.

{¶53} Accordingly, appellant fails to establish that his counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced his ability to receive a fair trial.

{¶54} Appellant's second assignment of error is overruled.

{¶55} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is hereby affirmed.

By: Delaney, P.J.

Gwin, J. and

Edwards, J. concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. W. SCOTT GWIN

_____

HON. JULIE A. EDWARDS

PAD:kgb

[Cite as *State v. Soliday*, 2012-Ohio-4481.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ANDREW J. SOLIDAY | : | |
| | : | |
| | : | Case No. 2011CA00280 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS