[Cite as *State v. Koehler*, 2014-Ohio-3922.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100915**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ALVIN KOEHLER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574375-B

**BEFORE:** Rocco, J., Celebrezze, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

-i-

**ATTORNEY FOR APPELLANT**

Stephen McGowan
19211 West Brooke Lane
Strongsville, Ohio   44149

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Erin Stone
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Alvin Koehler appeals from his conviction after a jury found him guilty of failure to stop after an accident in violation of R.C. 4549.02(A).

{¶2} Koehler presents a single assignment of error, arguing that the trial court incorrectly determined that the affirmative defense known as the "Castle Doctrine" was inapplicable to that charge, and that the trial court thus erred in denying his motion for acquittal. This court disagrees. Consequently, Koehler's assignment of error is overruled, and his conviction is affirmed.

{¶3} The incident that led to Koehler's conviction occurred in the city of Garfield Heights on May 11, 2013. According to the testimony of the state's witnesses, the incident unfolded in the following manner.

{¶4} Danielle Small had been dating Koehler's former girlfriend, Melissa Milliron, for a few months. Milliron introduced Small to Koehler on one occasion, and Small was aware of where Koehler lived.

{¶5} Recently, Small had permitted Milliron to move in to live with her. The two women spent part of the day sorting through Small's possessions to cull the things Small wanted to discard. They were drinking while they performed this chore.

{¶6} Within a few hours, Milliron became unpleasant toward Small. Small retreated to her bedroom to sleep, but awoke to see Milliron appropriating Small's "coin jar." Small reacted by "grabbing" Milliron's wrist and twisting it until the jar emptied. Small also threw a bottle of Milliron's prescription medication into the toilet and

demanded that she leave Small's home. As Milliron complied, however, she snatched Small's guitar before she ran out the door. The guitar had sentimental value to Small.

{¶7} Small wanted to pursue Milliron to reclaim the guitar, but, because she was wearing pajamas, she instead changed into other clothing. Small then decided to drive to the nearby convenience store to obtain some pain medication for the headache she had developed. When she arrived, she noticed that a large white truck had entered the parking lot. Small saw Milliron come from a shadowed area of the building, carrying Small's guitar, to approach the truck.

{¶8} Small understood that Milliron had called Koehler for a ride. Small reacted by immediately stopping her car, leaping out, and running to Koehler's truck just as Milliron opened the door on the passenger's side and placed the guitar next to Koehler. Upon reaching her goal, Small interposed herself between Milliron and the door and demanded her property.

{¶9} Small also reached for the guitar, grabbing a bar on the truck for leverage, but Milliron began screaming as she climbed into the passenger's seat, and shouted at Koehler to "go, go!" Koehler stepped on the gas pedal, dragging Small along the parking lot.

{¶10} Koehler's truck struck two curbs as he sought to escape the situation, causing Small to sustain injuries and then to drop to the ground, where she fell under the truck's rear wheels. Koehler's truck thus ran over Small before he drove out of the

parking lot. One of the witnesses testified that the truck "bounced" as it proceeded over Small.

{¶11} Milliron testified that she at that point stated to Koehler, "We have to turn around." She testified that Koehler countered that they had "to get the truck off the road" and continued to his home in Berea.

{¶12} Some store customers came to Small's aid, called the police, and waited with her until they arrived. Small managed to inform the police of the identities of the people in the truck and of Koehler's city of residence. After an ambulance transported her to the hospital, Small received treatment for fractures of her pelvis, coccyx, leg, and elbow.

{¶13} Koehler subsequently was indicted in this case with Milliron. As to Koehler, the indictment charged him with two counts of aggravated robbery, two counts of felonious assault, and one count each of aggravated vehicular assault, failure to stop after an accident, and theft. Koehler's case proceeded to a jury trial.

{¶14} After the state presented its case-in-chief, the trial court granted Koehler's motion for acquittal as to the first two counts and the theft count. Koehler then testified in his own behalf. The jury ultimately acquitted Koehler of the felonious assault and aggravated vehicular assault charges, but found him guilty of failure to stop after an accident.

{¶15} Thereafter, Koehler filed a written motion requesting the trial court pursuant to Crim.R. 29(C) to overturn the jury's guilty verdict. In his brief in support of the

motion, Koehler argued that he should be acquitted of that charge as well as the others because the evidence presented at trial proved his affirmative defense. Koehler contended that R.C. 2901.05(B), commonly known as the "Castle Doctrine," applied to all of the charges against him.

{¶16} The trial court held a hearing on Koehler's motion before denying it. The court then sentenced Koehler to a jail term of six months, but suspended the sentence and placed him on conditional community control for a year and a half.

{¶17} Koehler appeals from his conviction with the following assignment of error.

I. The trial court erred when it ruled that the Defendant's Privilege under ORC sec. 2901.05(B) (the "Castle" Doctrine) did not preclude a conviction pursuant to ORC sec. 4549.02(A).

{¶18} In his assignment of error, Koehler claims that the trial court improperly denied his Crim.R. 29(C) motion for acquittal of the charge of failure to stop after an accident because the privilege set forth in R.C. 2901.05(B) applied to the entire incident that formed the basis for the charges against him. This court cannot countenance Koehler's claim.

{¶19} The jury found Koehler guilty of violating R.C. 4549.02(A). The elements of that offense required the state to prove that, while driving a motor vehicle, Koehler was involved in a collision involving persons or property and, having knowledge of the collision, failed to immediately stop and remain at the scene, to provide his information to

any person injured, and to immediately notify the nearest police authority. *State v. Soliday*, 5th Dist. Stark No. 2011CA00280, 2012-Ohio-4481, ¶ 42.

{¶20} Koehler presents no argument that the state failed to meet this burden. *Compare State v. Ginn*, 2d Dist. Montgomery No. 7879, 1982 Ohio App. LEXIS 15495 (Dec. 1, 1982). Rather, he asserts that his actions during the entire incident were privileged pursuant to R.C. 2901.05(B), because it is a "specific" statute whereas R.C. 4549.02 is a "general" statute. Koehler's assertion is rejected.

{¶21} R.C. 2901.05 states in pertinent part as follows:

> (B) (1) * * * [A] person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is *in the process of* unlawfully and without privilege to do so entering, or *has unlawfully and without privilege to do so entered, the residence or vehicle* occupied by the person using the defensive force.

(Emphasis added.)

{¶22} In *State v. Johnson*, 8th Dist. Cuyahoga No. 92310, 2010-Ohio-145, ¶ 18, this court explained that, pursuant to R.C. 2901.05(B), commonly known as the "Castle Doctrine," a person is presumed to have acted in self-defense *when* attempting to expel or is expelling another from their home or vehicle who is unlawfully present. Under this doctrine, a person who is attempting to expel or is expelling another is permitted to use

either deadly force or force great enough to cause serious bodily harm during the action. *Id.* There is no duty to retreat. *Id.*

{¶23} The Castle Doctrine, however, has a time limitation. The operative word is "when." Once the "person against whom the defensive force is used" is no longer either on the defendant's property or a threat, or when the defendant has succeeded in "expelling" the other person, then the privilege under which the defendant operated is over. *State v. Black*, 5th Dist. Stark No. 2011 CA 00175, 2012-Ohio-2874, ¶ 26 ("[A]ppellant was not inside of or trying to expel an unlawful intruder from his residence or occupied vehicle when the * * * actions took place.").

{¶24} In this case, the altercation Koehler sought to defend against ceased when Small fell away from his truck. Small no longer posed a threat, especially after Koehler's truck ran over her. *Id.* Simply put, Koehler was not using "defensive force" when leaving the scene after running over Small. *State v. Nye*, 2013-Ohio-3783, 997 N.E. 2d 552, ¶ 29 (3d Dist.).

{¶25} Where "statutes are not irreconcilable, and effect can be given to both," they are not in conflict. *State v. Littlejohn*, 7th Dist. Mahoning No. 11 MA 106, 2012-Ohio-4554, ¶ 17. This reasoning applies to R.C. 2901.05(B) and R.C. 4549.02(A).

{¶26} Under these circumstances, the trial court correctly concluded in this case that the R.C. 2901.05(B) did not preclude Koehler's conviction of the charge of failure to stop after an accident. Koehler was not trying to "expel" Small from his vehicle when he

committed that particular offense.  *See State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, ¶ 25.   Consequently, Koehler's assignment of error is overruled.

{¶27} Koehler's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR