[Cite as *State v. Donovan*, 2025-Ohio-1476.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO.   C-240437 |
| | | TRIAL NO.    B-2303394 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| SEAN DONOVAN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 25, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, *Philip R. Cummings* and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *William R. Gallagher*, for Defendant-Appellant.

**NESTOR, Judge.**

**{¶1}** This case stems from a dispute between two neighbors that escalated into a physical altercation and ended with the victim being shot once in the arm. The State charged defendant-appellant Sean Donovan with felonious assault and another gun-related charge. At the bench trial, Donovan argued that he shot the victim in self-defense, but the trial court ultimately found that the State disproved beyond a reasonable doubt that Donovan acted in self-defense. He now appeals to this court, asserting two assignments of error. After reviewing the record and relevant caselaw, we affirm the judgment of the trial court.

I.

**{¶2}** On the afternoon of July 15, 2023, the victim ("A.D.") quickly walked towards the cul-de-sac of a neighborhood street, with a dog and two neighborhood children following closely behind him. Several cameras from neighboring homes and Donovan's home captured the exchange that ensued. Donovan emerged from his home, as it was his dog that A.D. approached with, and shortly thereafter, a verbal altercation erupted. While it is unclear exactly what was said between the two men, both agree that the altercation initially began because A.D. was angry that Donovan's dog was wandering around the neighborhood with the two children (as it often did). The two men continued to exchange words when A.D. pulled a firearm out of his bag, swung it at Donovan's face, and pointed it at Donovan and his dog.

**{¶3}** At that point, Donovan told A.D. that he also had a firearm. He then turned his back on A.D., returned to his home, and came back outside about 30 seconds later with his firearm. While Donovan retrieved his firearm from inside his home, A.D. is seen putting his firearm back in his bag and walking away from Donovan's home, towards the intersection at the bottom of Donovan's street (which

created a "T" intersection with another street). When Donovan reemerged from his home, he quickly walked into the middle of the cul-de-sac and pointed his firearm in the direction of A.D. at the bottom of the street. A.D. saw a green laser at his feet, and, believing it was from a firearm, he quickly jumped behind a nearby car and pulled his own firearm out once again. Donovan jumped behind a car on the same side of the street, and the two men then engaged in a cul-de-sac standoff, popping up from behind the cars with their firearms drawn, all while the children watched.

{¶4} After this went on for approximately 20 seconds, A.D. decided to walk away. As he turned his back and left, Donovan kept his firearm pointed in the direction of A.D. (down the hill and towards the intersection). At this point, Robert Worthington, a neighbor who lived on the corner of the intersection, came out of his home and witnessed a portion of the altercation. As A.D. walked away, video shows that his hands were up, and that Donovan continued to point his firearm at him. Donovan testified that A.D. threatened to kill him "the next time [he saw him]," and as A.D. did so, he pointed his firearm at Donovan. Worthington's testimony and his 9-1-1 call were mostly consistent with this account, but in his 9-1-1 call, he indicated that A.D. was walking away when the shot was fired.

{¶5} At this point, with apparent deliberate aim, Donovan shot A.D. once in the arm. Both men then left the scene and returned to their respective homes. The Hamilton County Grand Jury indicted Donovan on two counts of felonious assault under R.C. 2903.11(A)(1) and (2), and one count of discharging a firearm on or near prohibited premises under R.C. 2923.162(A)(3). Donovan ultimately claimed that he shot A.D. in self-defense because he feared that (based upon A.D.'s actions) A.D. would shoot him first. The case went to a bench trial, and the trial court ultimately found that the State disproved beyond a reasonable doubt that Donovan acted in self-

defense. In doing so, the trial court highlighted that Donovan "turned his back to the armed victim and calmly walked to his residence to retrieve his firearm[], [and he] seemed unhurried and dispassionate." The trial court also noted that he "was safe within the brick walls of his residence" when he "chose[] to reengage and seek[] out the victim," who was walking away.

**{¶6}** In his appeal to this court, Donovan asserts two assignments of error. He first argues that the trial court misinterpreted and misapplied the law when it considered his ability to retreat to his home. Next, he argues that the trial court's finding that the State disproved one or more of the self-defense elements beyond a reasonable doubt was against the manifest weight of the evidence. Due to the nature of Donovan's arguments, we will address his assignments of error in reverse order.

II.

**{¶7}** When deciding whether a judgment entered by the trial court is against the manifest weight of evidence, we "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. The manifest weight of the evidence standard refers to whether there is a "'*greater amount of credible evidence* . . . to support one side of the issue rather than the other.'" (Emphasis in original.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). We must look to and weigh the "'evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether . . . the [factfinder] clearly lost its way and created such a manifest miscarriage of justice'" to justify reversal. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶8}** Under Ohio law, a defendant claiming self-defense must first present evidence "'that tends to support that the [defendant] used the force in self-defense,'"

and then the burden shifts to the State and it "'must prove beyond a reasonable doubt that the [defendant] did not use the force in self-defense.'" *State v. Messenger*, 2022-Ohio-4562, ¶ 15, quoting R.C. 2901.05(B)(1). The State does not refute that Donovan met his initial burden of production. Therefore, in this case, the only issue is whether the State met its burden of persuasion. Accordingly, the trial had to determine whether the State disproved beyond a reasonable doubt that Donovan "(1) [] was not at fault in creating the situation giving rise to the affray; (2) [] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape from such danger was in the use of such force, and (3) [] did not violate any duty to retreat or avoid the danger." *State v. Smith*, 2020-Ohio-4976, ¶ 48 (1st Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2008). The State only needs to disprove one element of a self-defense claim to prevail on the issue. *Id.*, citing *State v. Cassano*, 2002-Ohio-3751, ¶ 73.

{¶9} In its written decision, the trial court highlighted the fact that Donovan turned his back on A.D. (who was armed), walked calmly back into his home, and eventually came back outside to reengage and seek out A.D. Thus, its judgment rested on its findings that the State disproved that (1) Donovan was not at fault in creating the situation and (2) that he had a bona fide belief of imminent danger of death or great bodily harm.

A.

{¶10} Donovan claims that the initial altercation when A.D. approached Donovan's property, swung his firearm at Donovan's face, and pointed his firearm at Donovan, solely gave rise to the affray. Furthermore, he argues that the entire event constituted one incident, as the short time it took him to go inside to retrieve his firearm kept the initial altercation and his subsequent acts so interconnected as to not

5

create two separate incidents. Thus, he argues that he did not reengage with A.D., as the entire incident constituted one event. We disagree.

**{¶11}** While there is no longer a duty to retreat before using deadly force in self-defense in Ohio, "the law continues to prohibit a person from provoking an assault or voluntarily entering an encounter and then claiming a right of self-defense." *State v. Warth*, 2023-Ohio-3641, ¶ 38 (1st Dist.). "Once the person against whom the defensive force is used is no longer either on the defendant's property or a threat, or when the defendant has succeeded in expelling the other person, then the privilege under which defendant operated is over." (Cleaned up.) *Id.* at ¶ 39, quoting *State v. Koehler*, 2014-Ohio-3922, ¶ 23 (8th Dist.). In other words, a defendant may not seek out and confront a victim to continue an earlier altercation. *See id.*, citing *State v. Sekic*, 2011-Ohio-3978, ¶ 15 (8th Dist.).

**{¶12}** Here, Donovan argues that he was permitted by law to retrieve his firearm and defend himself. While that may be true, he does not have a right to reengage with someone once an altercation has ended. The video taken from a neighbor's home shows that once Donovan went inside, A.D. put his firearm in his bag and *walked away*. When Donovan came back outside, he walked into the middle of the cul-de-sac, beyond his property, and pointed his firearm in A.D.'s direction. Donovan even testified that A.D. walked away once he went inside and that A.D. was further away from the spot of the initial altercation (again, indicating that A.D. walked away). At that point, the threat (A.D.) was gone and the initial altercation ended. Therefore, Donovan walking to the middle of the cul-de-sac and pointing his firearm towards A.D. is evidence that he acted in a manner that gave rise to the affray. *See id.* at ¶ 40 ("But Warth arming himself while on his property is not the issue. Rather, the issue in this case is that Warth voluntarily reentered the dispute by pursuing Estes

6

after she had left his property. Warth's choice to follow Estes escalated the situation."). Donovan chose to follow A.D. after the altercation ended. In doing so, he reentered the dispute and was at fault in creating the situation that gave rise to the affray.

B.

**{¶13}** Donovan next takes issue with the trial court's finding as to his bona fide belief that he was in imminent danger of death or great bodily harm if he did not use force. As noted previously, the trial court stated that Donovan "turned his back to the armed victim and calmly walked to his residence to retrieve his firearm[], [and he] seemed unhurried and dispassionate." Based on that, the trial court found that Donovan "did not have reasonable grounds to believe or an honest belief that he was in imminent danger of bodily harm . . . ." In analyzing this factor, it "'is a combined subjective and objective test.'" *State v. Helmondollar*, 2024-Ohio-2077, ¶ 43 (5th Dist.), quoting *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). Thus, Donovan's "belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself . . . ." *Id.*, citing *Thomas* at 330-331.

**{¶14}** "The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger." *Id.* at ¶ 44, citing *State v. Watson*, 2023-Ohio-3137, ¶ 86 (5th Dist.). In assessing whether Donovan had "'an honest belief that [he] sat in [] danger'" of death or great bodily harm, the trial court looked to the totality of the circumstances. *See In re J.S.*, 2024-Ohio-1764, ¶ 22 (1st Dist.), quoting *State v. Wilson*, 2022-Ohio-3801, ¶ 13, and citing *State v. Mitchell*, 2023-Ohio-2604, ¶ 25 (1st Dist.), and *In re J.P.*, 2023-Ohio-4816, ¶ 22 (1st Dist.). Donovan was required to "demonstrate that he acted out of fear, or he felt that his life was threatened." (Cleaned up.) (Citations omitted.) *State v. Terry*, 2023-Ohio-2074,

¶ 11 (1st Dist.).

**{¶15}** During the events that took place, Donovan turned his back on the perceived threat, who he knew had a gun, and once Donovan went inside his home, the threat ended. Donovan chose to reengage with A.D. The act of turning his back on A.D. and following A.D. (someone he supposedly feared) once he departed contradicts the notion that Donovan subjectively feared that he was in imminent danger. Additionally, Donovan testified that once he was inside his home, he did not fear that A.D. would harm him. Therefore, his own testimony contradicts that he subjectively feared A.D. at that point.

**{¶16}** "'The objective part of the test requires consideration of "whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack," a reasonable person would believe that danger was imminent.'" *Helmondollar*, 2024-Ohio-2077, at ¶ 44 (5th Dist.), quoting *Watson*, 2023-Ohio-3137, at ¶ 86 (5th Dist.). Again, A.D. walked away from the altercation once Donovan went inside. Donovan then pursued A.D. once he came back outside. *See Warth*, 2023-Ohio-3641, at ¶ 46-50 (1st Dist.) ("Regarding whether Warth had an objectively reasonable belief of an imminent threat . . . [a]fter Tyler smacked her in the forehead through the locked screen door, Estes began to walk away, and Tyler closed the front door on Estes. . . . The jury reasonably found that the state proved lack of self-defense beyond a reasonable doubt."); *State v. Jones*, 2025-Ohio-168, ¶ 20 (8th Dist.) ("[W]e cannot say that Jones's belief that he was in imminent danger of death or great bodily [harm] was objectively reasonable. . . . Jones pursued the victim to his vehicle and then fired his weapon . . . .").

**{¶17}** Based on the foregoing analysis, we cannot say that the trial court's

8

ruling was against the manifest weight of the evidence when it found that the State disproved that Donovan (1) was not at fault in creating the situation that gave rise to the affray, and (2) that he had a bona fide belief of imminent harm. "Reversing a conviction and granting a new trial should only be done in 'exceptional cases in which the evidence weighs heavily against the conviction.'" *Warth* at ¶ 50, quoting *State v. Padgett*, 2021-Ohio-2905, ¶ 21 (1st Dist.). Even though Donovan presented evidence supporting his self-defense claim, that does not mandate a reversal of the trial court's judgment. As such, his second assignment of error is overruled.

III.

**{¶18}** In his first assignment of error, Donovan asserts that the trial court misinterpreted and misapplied Ohio's self-defense law. In doing so, he makes a mix of legal and factual arguments, largely arguing that the trial court inappropriately concluded that he had a duty to retreat before using force in self-defense.

**{¶19}** As it pertains to Donovan's assertion that the trial court misapplied the law regarding one's duty to retreat in Ohio, we review such arguments de novo. *State v. Greer*, 2023-Ohio-103, ¶ 33 (6th Dist.), quoting *Dublin v. Starr*, 2022-Ohio-2298, ¶ 50 (10th Dist.). As stated previously, there is no longer a duty to retreat before one uses force in self-defense. *Warth*, 2023-Ohio-3641, at ¶ 30 (1st Dist.), quoting R.C. 2901.09(C). However, while courts may not consider whether a defendant had the opportunity to retreat in determining whether the use of force was necessary, courts are not completely barred from considering such evidence, as it may clarify "who was at fault in creating the situation leading to the affray." *Id.* at ¶ 31, citing *State v. Hughkeith*, 2023-Ohio-1217, ¶ 88 (8th Dist.). To the extent the trial court considered the fact that Donovan "was safe within the brick walls of his residence," it was for purposes of determining who was at fault in creating the situation. In fact, the trial

court stated that "[t]here is a marked difference between a duty to retreat and the conscious choice to arm yourself and seek out a perceived threat." This echoes the clear difference between these two evidentiary considerations that this court established in *Warth*. Any other assertion by Donovan that the trial court misapplied Ohio law rests upon a misunderstanding of the trial court's decision. It made clear that it was not considering Donovan's *ability* to retreat, just that he *reengaged* with A.D. after he went into his home.

**{¶20}** All other assertions under this assignment of error seemingly argue that the trial court's decision was misaligned with the evidence. Therefore, any remaining arguments are dealt with by the resolution of Donovan's second assignment of error addressed previously. We accordingly overrule his first assignment of error.

IV.

**{¶21}** Based on the foregoing analysis, we overrule both of Donovan's assignments of error and accordingly affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.