[Cite as *State v. Warth*, 2023-Ohio-3641.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220477 |
| | | TRIAL NO. B-2102322 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CHRISTOPHER WARTH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 6, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**Bock, Judge.**

{**¶1**}    Defendant-appellant Christopher Warth appeals his conviction for felonious assault, raising 14 assignments of error. We affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings.

## I.    Facts and Procedure

{**¶2**}    Warth was indicted on two counts of felonious assault under R.C. 2903.11(A)(1) and (2), respectively. The matter was tried to a jury.

### *Surveillance video captured shooting.*

{**¶3**}    At trial, the state introduced three surveillance videos taken from Warth's property. One was from inside Warth's home and showed the front door. The second video showed the front door from the porch. The third showed the driveway, yard, and sidewalk.

{**¶4**}    April Estes testified that, in May 2021, after the police informed her that they could not pursue charges on the allegation that Warth had sexually assaulted Estes's daughter in 2007, she went to Warth's home to inform him that she knew about the assault. Estes's girlfriend, Ashley, was in the vehicle with Estes.

{**¶5**}    Estes knocked on Warth's door and April Tyler, Warth's mother, opened the front door but remained behind the closed screen door. Video surveillance supports Estes's testimony that she never touched the door other than knocking on it and was not trying to get inside the home.

{**¶6**}    According to Estes, she asked Tyler for Warth and explained the allegation against him. As the two began arguing, Warth came downstairs with a gun in hand. The surveillance video shows that Warth had the gun raised to where Estes

could see it through the screen door. Estes testified that, when Warth came downstairs, he looked "like a maniac with his firearms and stuff."

{¶7} Tyler testified that Estes made no threats before Warth got downstairs with his gun already in hand. Warth went to the door and then put the gun on the kitchen table.

{¶8} As Estes, Tyler, and Warth continued to argue through the screen door, Tyler smacked Estes in the forehead through the screen door and then closed the solid door. Warth went into another part of the home. Estes walked off the porch of the home and toward the sidewalk. Tyler and Warth continued to argue with Estes from inside of their home. Tyler called 911 as the situation continued.

{¶9} Tyler told the operator that she did not think that Estes had any weapons. Warth went out onto the porch with his gun as Tyler spoke with the 911 operator. Estes stated that, by the time Warth exited from the house with his gun the first time, Tyler had already shut the door and Estes was at or near the sidewalk. Tyler also came outside and began to argue with Estes again as Estes slowly backed off of the property toward the street. As Warth went back inside the house, Tyler picked up a flowerpot and motioned as if she were going to throw it at Estes.

{¶10} Estes testified that she did not leave the area because they were still engaging with her, and she was not going to turn her back on them. She added that she "wasn't getting out of there that day without getting shot" and she "knew that from the minute he answered the door with [the gun] in his hand."

{¶11} Warth continued to enter and exit the house. Eventually, Warth, gun in hand, walked to the end of the porch where Tyler was still arguing with Estes, who was on the sidewalk.

{¶12}  As Estes stood on the sidewalk, Tyler and Warth approached her. As they got closer, Estes put her right hand in her right pocket and forcibly shook the pocket, then took a fighting stance. Estes testified that she told them not to come any closer. She denied having weapons or threatening to harm them because "that's not what [she went there for.]"

{¶13}  Estes testified that she was begging Warth and Tyler to back off while she was holding her sweatpants up as they "tend to sag a little bit * * * from the weight" of her cell phone in her pocket. She stated that she was getting herself ready in case Tyler was going to hit her again because Tyler was "coming at [her]." Estes asserted that she kept her fist balled up inside of the pocket of her sweatpants "[p]robably just trying to scare them back."

{¶14}  Tyler and Warth were within arm's reach when Estes, still in a fighting stance, stepped off the sidewalk onto the lawn and lunged toward Warth and then toward Tyler. Warth stepped back, pulled his gun from his left pocket, and switched it to his right hand. Warth shot Estes twice in the stomach as she lunged at Tyler. Estes's hands were at her side—with both hands empty and visible—when Warth shot Estes.

{¶15}  After Warth shot Estes, Ashley attempted to pull her away from the scene. Warth, however, repeatedly pushed Estes down and kicked Estes in the chest while pointing the gun at both Estes and Ashley. Estes testified that she was certain that "he was going to blow [Ashley's] head off" because he kept pointing the gun at her, or that he would shoot Estes in the head after he "stomped [Estes's] head." Estes testified that she thought she was going to die.

{¶16}  Estes suffered lacerations to her liver and kidney, damage to her L3-L4 vertebrae, and she had an ileostomy bag for six months. Estes learned to walk again

4

through physical therapy, though she continued to suffer from nerve damage in her leg.

*Officers responded to the scene and interviewed Warth.*

{¶17} Officer Richard Coy, a responding officer, testified that he heard a gunshot as he was enroute to Warth's home. When Coy arrived, Warth was holding a handgun in his right hand, so Coy immediately drew his weapon and ordered Warth to drop his pistol. Instead of complying, Warth argued with Coy, stating that he had surveillance cameras. Warth did not comply until Coy repeated the command several times. Coy testified that he saw Estes injured and lying on the ground but neither he nor the medics could get to her until Warth dropped his weapon and the scene was secured.

{¶18} Police searched Estes, Ashley, and the car in which they had arrived. They found no weapons.

{¶19} Detective Michael Webb responded to the scene, reviewed the video surveillance, and interviewed Warth. During the interview, Warth referred to Estes as "[t]his girl or guy, whatever the fuck it is," and stated that Estes kept hitting through the screen door, tried to grab the storm door, and punched the window. Warth claimed that he saw a knife handle in Estes's pocket, asserted that his gun had been holstered, denied knowing Estes before admitting that he knew her from school, and said that Estes kept lunging toward him before he "popped her."

{¶20} Webb stated that, while Warth may have thought Estes had a weapon, Warth "definitely show[ed] Ms. Estes that he had a weapon." When asked by defense counsel to concede that Warth only pointed the gun when he shot Estes, Webb responded that he recalled Warth pointing the gun in the air to show Estes that he had

5

it. Warth agreed with Webb's suggestion that he could have "simply locked the door and nothing would have occurred." The front door was locked before Warth and Tyler went outside to confront Estes.

{¶21} Though Webb's decision to charge Warth was based on Warth having the ability to remain in his home instead of confronting Estes while she stood on a public sidewalk and shooting her twice, he also testified that Warth did not have to go back into his home. The state's closing argument echoed this testimony. Webb added that the front door "would secure both" Warth and Estes, and Warth more so than Estes had the ability to retreat.

*The jury reached a guilty verdict on both counts of felonious assault.*

{¶22} The court instructed the jury that words alone do not justify the use of force, "no matter how provocative." The jury returned a guilty verdict on both counts and specifications.

{¶23} During sentencing, the court pointed to comments that Warth made in his police interview that "show[ed] an utter disdain for the victim on the same day. That is part—that is part of the record." The court also considered the seriousness factors under R.C. 2929.12(B), stating that the injury suffered by Estes was grave as she suffered serious physical harm as well as economic and psychological harm. As to the R.C. 2929.12(C) factors, the court stated that Estes could have left the home, but her actions were not a sufficient provocation and Warth's claims of self-defense and argument in mitigation were not sufficient under the law. The court noted that Warth did not have a criminal record and that it must consider his status as a military veteran as he sustained injuries during his service and suffered from posttraumatic stress syndrome ("PTSD"), though "the court clinic did not find [his PTSD] significant

6

enough to be diagnoseable."

**{¶24}** The trial court sentenced Warth to an indefinite term of nine to 12 years in the Ohio Department of Rehabilitation and Correction. The court merged the specification in count two with the specification in count one and ordered the sentences to be served concurrently.

## II. Law and Analysis

**{¶25}** Several of Warth's assignments of error involve evidence to which Warth failed to object at trial. These asserted errors may only be reviewed for plain error. *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7. To demonstrate plain error, Warth must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52; *see* Crim.R. 52(B). A reviewing court should not correct plain error other than in "exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶26}** We address Warth's assignments of error out of order for ease of discussion.

### A. The state did not suggest that Warth should have retreated.

**{¶27}** In his fourth assignment of error, Warth argues that the trial court erred to his prejudice by improperly admitting evidence of the possibility of retreat in a self-defense case as it was contrary to law.

**{¶28}** Warth points to multiple instances in which the state allegedly elicited evidence of the possibility of retreat. But Warth objected once, on the third day of trial, after multiple instances of the alleged improper testimony occurred. Moreover,

7

Warth's counsel elicited testimony that was similar to what Warth asserts the state improperly elicited. Thus, the fourth assignment of error may only be reviewed for plain error. *See Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 7.

{¶29} Under R.C. 2901.05, when a defendant presents evidence that tends to support that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1); *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49. The state carries the burden to disprove one or more of the elements of self-defense in the use of deadly force: (1) the defendant did not create the situation giving rise to the affray, or (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape from such a danger was to use such force. *State v. Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, ¶ 17. The test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm. *State v. Moore*, 9th Dist. Summit No. 29581, 2023-Ohio-2864, ¶ 10.

{¶30} The newly-amended "stand your ground" law, R.C. 2901.09(B), provides that "a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(C) provides, "A trier of fact shall not consider the possibility of retreat as a factor in determining whether * * * a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."

{¶31} But R.C. 2901.09(C) is not an absolute prohibition on introducing evidence involving the possibility of retreat. Rather, the statute only prohibits fact finders from considering evidence involving the possibility of retreat to determine whether the defendant's belief that force was necessary was reasonable. Fact finders may, however, consider retreat evidence to determine who was at fault in creating the situation leading to the affray. *State v. Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, ¶ 88 (8th Dist.) ("While a person no longer has a duty to retreat from a place he or she is lawfully permitted to be, there is no language in the amended statute to suggest a trier of fact is precluded from considering whether the defendant was the initial aggressor or whether the defendant attempted to withdraw from the situation when determining whether the defendant was at fault in creating the situation giving rise to the affray. The narrow language of the amended statute does not place on triers of fact express restrictions on consideration of fault.").

{¶32} Warth takes issue with the state's opening statement, which discussed Warth, who was armed, leaving the safety of his home to reengage Estes. But this statement does not involve a duty to retreat. Moreover, the state clarified that Warth had no duty to retreat back into his house or from his property.

{¶33} Warth further asserts that Webb's testimony was improper because he testified to his understanding of the law as it related to his decision to arrest Warth, which was based on Warth leaving the safety of his home to reengage Estes after she had left the property. Warth misconstrues this testimony as suggesting that Warth had a duty to retreat. He is incorrect. Webb never suggested that Warth had a duty to retreat. Rather, the testimony focused on Warth choosing to advance toward Estes

after she had left Warth's property. In fact, Webb testified that Warth did not have a duty to retreat into the house when Estes lunged at him and Tyler.

{¶34}  And the trial court's jury instructions clearly stated that Warth had no duty to retreat and that the jury was not to consider the possibility of retreat when determining whether Warth had a reasonable belief that force was necessary:

> Determining reasonable belief. In determining whether the defendant, in using force in self-defense, reasonably believed that the force was necessary to prevent injury, loss, or risk of life, or safety, you must not consider the possibility of retreat by the defendant.

> "No duty to retreat." The defendant had no duty to retreat before using force in self-defense if the defendant was in a place which he lawfully had a right to be.

{¶35}  The trial court committed no error. We overrule Warth's fourth assignment of error.

B.  Warth's conviction was supported by sufficient evidence, and it did not run contrary to the weight of the evidence.

{¶36}  Warth argues his first three assignments of error together, asserting that (1) his conviction was not supported by sufficient evidence, (2) the conviction ran contrary to the weight of the evidence, and (3) the state failed to disprove Warth's self-defense claim beyond a reasonable doubt.

{¶37}  The Ohio Supreme Court has held that a self-defense claim is not an element of the offense that must be proven by the state and, therefore, it is not subject to review for sufficiency of the evidence. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 24-27. Thus, we overrule Warth's first assignment of error. *State v. Wilson*, 2d Dist. Clark No. 2021-CA-68, 2022-Ohio-3763, ¶ 60 (A self-defense claim

10

naturally concedes commission of the offense.).

{¶38} Warth's second and third assignments of error require this court to determine whether the jury's verdict was contrary to the manifest weight of the evidence regarding whether the state disproved Warth's self-defense claim. *See Messenger* at ¶ 26. The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2019-Ohio-4027, ¶ 63. In reviewing a challenge to the weight of the evidence, this court sits as a "thirteenth juror." *State v. Curry*, 1st Dist. Hamilton No. C-190107, 2020 Ohio App. LEXIS 1184, *7 (Mar. 31, 2020), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Bailey* at ¶ 63.

{¶35} Under R.C. 2901.05(B)(1), a person may act in self-defense, defense of another, or defense of that person's residence. As discussed above, when a defendant presents evidence that tends to support that the defendant used force in self-defense, the state must disprove the accused's self-defense claim beyond a reasonable doubt. R.C. 2901.05(B)(1).

{¶36} Warth heavily relies on *State v. Gillespie* to support his self-defense claim. *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, 874 N.E.2d 870 (2d Dist.). In that case, when the victim came to Gillespie's home to purchase drugs, Gillespie noticed that the victim had a knife. *Id.* at ¶ 2. After Gillespie accused the victim of stealing his property and went to retrieve a shotgun, the victim had fled. *Id.* at ¶ 3-4. Gillespie went to the victim's mother's home with the shotgun because he knew that the victim had a knife. *Id.* at ¶ 4-5. The two walked back to Gillespie and his

girlfriend's house, but after the argument escalated, Gillespie's girlfriend asked the victim to leave. *Id.* at ¶ 6. The victim walked outside and Gillespie followed him. *Id.* Though the two offered different accounts of what happened next, Gillespie testified that the victim had pulled a knife and began approaching him and Gillespie shot him in self-defense. *Id.* at ¶ 6-7. The trial court refused to instruct the jury on self-defense. *Id.* at ¶ 14. The reviewing court reversed for a new trial, noting:

> Defendant's own testimony demonstrates that he could have avoided any confrontation with Banks by simply remaining at home after Banks left Defendant's home. Instead, Defendant retrieved a loaded shotgun, and then went looking for Banks, intending to retrieve his stolen property. When Defendant located Banks at his mother's house, Defendant summoned Banks to come outside, and then escorted Banks back to Defendant's house, where the argument over whether Banks took Defendant's property continued and escalated. Simply put, Defendant's own conduct renewed the confrontation with Banks which had concluded when Banks left Defendant's home.

*Id.* at ¶ 16. The court determined, however, that the trial court should have given the self-defense instruction to the jury because reasonable jurors could have concluded that the victim was at fault, noting, "That assumes that Banks attacked Defendant with a knife, as Defendant claims." *Id.* at 18.

{¶37} *Gillespie* does not convince us to hold that the trial court's judgment was contrary to the manifest weight of the evidence. The issue in Gillespie was whether he had presented evidence that tended to show that he acted in self-defense, entitling him to a self-defense jury instruction. Here, however, the trial court provided a self-defense

12

jury instruction. Thus, the question becomes whether the jury's verdict was contrary to the manifest weight of the evidence in finding that the state proved beyond a reasonable doubt that Warth (1) was at fault in creating the situation giving rise to the affray; or (2) did not have an objectively reasonable or a subjective, honest belief that he or his mother was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape. *See Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, at ¶ 19, 24. The state need only disprove one of the self-defense elements beyond a reasonable doubt. *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10.

<u>At fault for creating the situation giving rise to the affray.</u>

**{¶38}** Although the laws involving self-defense claims were amended in 2019 and 2020, affecting the state's burden and the duty to retreat, the law continues to prohibit a person from provoking an assault or voluntarily entering an encounter and then claiming a right of self-defense.

**{¶39}** "Once the 'person against whom the defensive force is used' is no longer either on the defendant's property or a threat, or when the defendant has succeeded in 'expelling' the other person, then the privilege under which defendant operated is over." *State v. Koehler*, 8th Dist. Cuyahoga No. 100915, 2014-Ohio-3922, ¶ 23; *see State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 Ohio App. LEXIS 329 (Jan. 22, 2002) (defendant followed the victim to provoke an altercation); *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 15 (defendant cannot claim self-defense when he "willingly advanced toward a volatile situation" by confronting the victim to continue an earlier altercation); *State v. Gaston*, 8th Dist. Cuyahoga No. 98904, 2013-Ohio-2331, ¶ 16-17 (even if the victim is the immediate aggressor, the defendant cannot

13

provoke an assault or voluntarily enter an encounter and then claim a right of self-defense after the victim predictably attacks); *State v. Johnson*, 8th Dist. Cuyahoga No. 110673, 2022-Ohio-2577, ¶ 13 (defendant's conduct could not support a self-defense claim where undisputed evidence demonstrated that defendant waited for the victim to exit the building and approached the victim with the intent to rekindle the earlier fight).

{¶39} Citing *Gillespie*, Warth contends that he cannot be found "at fault" for arming himself with a weapon while on his property. He asserts that Estes planned to come to his home to confront him, she "threatened to 'stick' [Warth] while concealing her hand in her pocket as if she had a weapon," and "escalated this situation when she came onto [Warth's] private property and lunged at him and his mother."

{¶40} But Warth arming himself while on his property is not the issue. Rather, the issue in this case is that Warth voluntarily reentered the dispute by pursuing Estes after she had left his property. Warth's choice to follow Estes escalated the situation.

{¶41} The video shows that Estes did not attempt to enter Warth's house. She did not get into a fighting stance or lunge at Warth and his mother until they came outside after her. Warth was armed with a gun and came within a few feet of Estes. Warth told the investigators that Estes saw his gun when he first came downstairs. Because Warth repeatedly came outside visibly holding a weapon, Estes knew that Warth had the gun, and she had a valid fear that he would use it on her.

{¶42} The evidence supports a finding that Warth voluntarily reentered the conflict after the threat had been removed. Estes's coming to the home to confront Warth about the sexual assault created an environment ripe for a physical confrontation, but Estes was on the sidewalk creating no threat to Warth when he

14

came back outside with his gun.

Bona fide fear of imminent death or great bodily harm.

**{¶43}** As discussed above, a defendant's belief that he was in immediate danger of death or great bodily harm must be objectively reasonable, and the defendant must have a subjective, honest belief that he was in such danger. *Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, at ¶ 29. If the objective standard is met, "the jury must determine if, subjectively, this particular defendant had an honest belief that []he was in immediate danger." *State v. Thomas*, 77 Ohio St.3d 323, 331, 673 N.E.2d 1339 (1997). The state may disprove self-defense by demonstrating that the defendant's belief was not objectively reasonable or that he did not have an honest subjective belief that he faced imminent death or great bodily harm. *See Williams*, at ¶ 29.

**{¶44}** "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Becker*, 5th Dist. Stark No. 2022 CA 0069, 2023-Ohio-601, ¶ 26, quoting *State v. Shane*, 63 Ohio St.3d 630, 634-635, 590 N.E.2d 272 (1992).

**{¶45}** The jury reasonably could conclude that Warth did not have a bona fide belief that he or his mother was in danger of death or serious bodily harm.

**{¶46}** Regarding whether Warth had an objectively reasonable belief of an imminent threat of death or serious bodily harm, Tyler told police that she did not believe that Estes had a weapon. Warth and Tyler were safely behind a locked door. Estes never "beat" or kicked the door or attempted to gain entry to the home. After Tyler smacked her in the forehead through the locked screen door, Estes began to walk away, and Tyler closed the front door on Estes. Finally, Estes's hands were out of her

pockets when Warth fired his gun.

{¶47} Even if Warth's belief were objectively reasonable, a jury reasonably could have found that Warth lacked an honest subjective belief that he or his mother were in imminent danger of death or serious bodily harm. Warth entered and exited from the house multiple times, once unarmed, and once left his mother alone outside with Estes. If he were honestly afraid of Estes attacking him or his mother, he would not have left his mother alone with Estes or confronted her unarmed.

{¶48} Moreover, Warth's comments to police, which were played to the jury, suggested that he did not fear her. In describing how he felt threatened by Estes, Warth said, "[S]he kept saying, I'll stick you. Come on. Put that gun down. Come out here. I'll stick you. I'll stick you right now. And I was like, what are you gonna stick me with, a fucking what? Your dildo? What?" Warth also said three separate times that Estes threatened to "come back" to harm him and his family, which does not indicate an imminent threat of bodily harm or death.

{¶49} Finally, Warth lied to police about Estes pounding and kicking at the door, in saying he did not know who Estes was, and about seeing a knife handle in Estes's pocket. The jury could have believed that these lies to police undermined Warth's credibility, which could have caused the jury to disbelieve his assertion that he honestly feared Estes would kill or seriously injure him or his mother.

{¶50} Reversing a conviction and granting a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *State v. Pagdett*, 1st Dist. Hamilton Nos. C-200327 and C-200238, 2021-Ohio-2905, ¶ 21. This is not one of those exceptional cases. The jury reasonably found that the state proved lack of self-defense beyond a reasonable doubt. We overrule Warth's first,

second, and third assignments of error.

### C. Webb's testimony was admissible.

**{¶51}** In his fifth assignment of error, Warth argues that the trial court erred by permitting Webb to express his opinion as to whether Warth acted in self-defense. Warth did not object to this testimony, thus, we review it for plain error. The testimony to which Warth objects on appeal is as follows:

WEBB: And Mr. Warth and his mother continue to go towards her. You know Mr. Warth told us several times that he was in fear, yet, he was going forward.

Those two things didn't make sense. There was a confrontation at the corner of the property where Mr. Warth and his mother approached Ms. Estes, and, you know, she made some – some movements as if she was going to fight.

You know, what we took into consideration was it was reasonable for Ms. Estes to think that there was an imminent threat to her. Mr. Warth stated that he felt that she may have had something, but never seen it. However, Mr. Warth did definitely show Ms. Estes that he had a weapon.

So at that point where she was on the public sidewalk, and she was approached by two individuals, was it reasonable for her to fear that she was in imminent danger?

We felt the imminent threat was more for her to feel fear at that point.

I asked Mr. Warth if – you know, you could have simply locked the door and nothing would have occurred?

He did agree with that statement. So the conclusion was – is that we felt

Mr. Warth was in violation of felonious assault at that point.

{¶52} Warth offers no plain-error argument, other than, "Even under the plain error standard, reversal is required. This is an obvious violation of the law that adversely affected Warth's substantial rights." This conclusory statement does not provide this court any argument about why admitting this evidence was plainly erroneous. While under Crim.R. 52(B), this court has the discretion to correct plain errors affecting a defendant's substantial rights, "the accused bears the burden of proof to demonstrate plain error on the record." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. When an appellant fails to develop a plain-error analysis, the appellate court need not create one on the appellant's behalf and may decline to reach the merits of the claim. *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 23. For this reason, Warth's fifth assignment of error fails.

{¶53} But even if Warth had offered a plain-error argument, a trial court does not commit reversible error by permitting police officers to testify about the process of their investigation. *See State v. Fhiaras*, 8th Dist. Cuyahoga No. 97740, 2012-Ohio-3815, ¶ 38 (testimony involving a police officer's role in deciding whether his investigation should continue, and whether that investigation should continue to focus on both a particular offense and a specific suspect, was permissible); Evid.R. 701; *see also State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 108 (1st Dist.) (testimony of a detective was rationally based on his training and personal experience in child-abuse cases, and aided the trier of fact in determining the child-victim's credibility).

{¶54} Webb did not give an opinion about whether Warth acted in self-defense. Rather, Webb testified that it was reasonable for Estes to feel fear when Tyler

and Warth—who was armed—approached her on the sidewalk. Webb also testified about the portion of the police interview where he asked Warth if he could have stayed behind the locked door and that Warth agreed. This was informing the jury about his investigation. It was not expert testimony that Warth did not act in self-defense.

**{¶55}** We overrule Warth's fifth assignment of error.

D. <u>The trial court did not commit plain error by admitting other-acts evidence.</u>

**{¶56}** In his sixth assignment of error, Warth argues that the court improperly admitted evidence of sexual misconduct because it permitted Estes to testify to her belief that he molested her daughter.

**{¶57}** Other-acts evidence is admissible when the acts form a part of the "immediate background of the act" as part of the charged crime. *State v. David*, 1st Dist. Hamilton No. C-210227, 2021-Ohio-4004, ¶ 16.

**{¶58}** Warth did not object to this testimony and fails to make a plain-error argument other than, "Even though not objected to at trial, this error also adversely affected Warth's substantial rights, requiring reversal even under the plain error standard."

**{¶59}** But had Warth properly preserved this issue and made more than a conclusory plain-error argument, the accusation about Warth molesting Estes's daughter forms part of the "immediate background of the act." The allegation explains why Estes confronted Warth and why both Warth and Tyler were angry. The evidence was admissible. We overrule Warth's sixth assignment of error.

E. <u>There was no prosecutorial misconduct regarding the availability of retreat.</u>

**{¶60}** In his seventh assignment of error, Warth argues that the state engaged in misconduct that prejudicially affected his substantial rights when it argued and

elicited testimony regarding Warth approaching Estes, being the aggressor, and failing to retreat. He contends the state presented improper opinion evidence regarding whether Warth acted in self-defense and as to prior bad acts.

**{¶61}** For the same reasons discussed in the previous assignments of error, the state did not engage in misconduct and, therefore, there was no error. We overrule Warth's seventh assignment of error.

### F. Warth was not denied due process.

**{¶62}** In his eighth assignment of error, Warth argues that his due-process rights were violated when the police corrupted the audio on the surveillance footage. Warth contends that, had the audio not been corrupted, then the jury would have been able "to hear Estes' actual tirade and threats to kill Warth and his mother," which was exculpatory.

**{¶63}** "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, Warth first must demonstrate that the state withheld evidence. *State v. Hawk*, 10th Dist. Franklin No. 21AP-265, 2021-Ohio-4533, ¶ 20.

**{¶64}** "A defendant may allege a *Brady* violation based on loss or destruction of exculpatory evidence; however, in those cases the evidence must have actually existed at some point." *State v. Black*, 10th Dist. Franklin No. 22AP-180, 2022-Ohio-3119, ¶ 20, fn. 2. Warth must establish a *Brady* violation based on more than his "unsupported assertion" that the audio "could have existed without some evidence to

suggest that such [audio] actually did exist." *See State v. Blade*, 6th Dist. Lucas No. L-22-1091, 2023-Ohio-658, at ¶ 23.

{¶65} Here, Warth testified that his surveillance cameras record audio, that there was audio on previous videos when he had used the cameras before, and he had not removed any audio from the surveillance of the shooting.

{¶66} But Warth did not assert that there had been audio on the videos played during trial. Indeed, there was no evidence that any audio existed or that police damaged the recording. Warth cannot establish a *Brady* violation and, therefore, we overrule Warth's eighth assignment of error.

G.  The trial court did not err in precluding Warth's witness from testifying.

{¶67} In his ninth assignment of error, Warth argues that the trial court erred by precluding him from presenting a witness who would have testified to seeing a Facebook post where Estes threatened Warth, which had since been removed.

{¶68} This court recognizes that trial courts have wide discretion in the admission or exclusion of evidence. *State v. Neal*, 1st Dist. Hamilton No. C-210166, 2022-Ohio-1290, ¶ 29. We review such decisions for an abuse of discretion. *Id*. To find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Ofori*, 1st Dist. Hamilton Nos. C-220367, C-220368, C-220369, and C-220370, 2023-Ohio-1460, ¶ 14, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We will not reverse an evidentiary ruling absent a showing that an incorrect ruling affected a party's substantial rights. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 181.

{¶69} A party claiming error involving the trial court's exclusion of evidence must show that the party's substantial rights were affected and that the party informed the trial court of the substance of the evidence by proffer or by context of the questions asked. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 113; Evid.R. 103(A)(2). "The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant." *State v. Gibson*, 1st Dist. Hamilton No. C-220176, 2023-Ohio-1154, ¶ 33, quoting *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362, ¶ 37 (11th Dist.). A proffer cannot be vague—it must provide "specific information," rather than general descriptions. *State v. Robinson*, 3d Dist. Allen No. 1-19-79, 2020-Ohio-4880, ¶ 32-33; *Hallisy v. Hallisy*, 11th Dist. Geauga No. 2022-G-0048, 2023-Ohio-2923, ¶ 20.

{¶70} At trial, the court asked if Warth intended to call any witnesses. Relevant to the substance of the Facebook post, Warth's counsel stated, "There was testimony by Ms. Estes where I confronted her with a statement that she had posted to Facebook messages looking to harm Mr. Warth. * * * We plan to call a witness who will say that she had seen this and that there [were] threats of harm." There was no other information proffered.

{¶71} Warth provided to the trial court no specific information about the evidence he wished to elicit. Instead, he gave only a general description: that there were "threats of harm." There was nothing suggesting the nature of the threats, when the threats were made, what kind of harm Estes allegedly threatened, or if the post contained any specific threats.

{¶72} Warth's failure to proffer the witness's testimony renders this court

unable to review the proposed testimony to determine whether its exclusion affected Warth's substantial rights. Accordingly, Warth forfeited this issue on appeal. We overrule Warth's ninth assignment of error.

### H.  Warth was not denied the effective assistance of counsel.

{¶73}  In his tenth assignment of error, Warth argues that he was denied the right to the effective assistance of counsel where his attorney failed to object to the impermissible testimony and evidence presented by the prosecution.

{¶74}  In any ineffectiveness case, a particular decision must be directly assessed for reasonableness, applying a heavy measure of deference to counsel's litigation strategy. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland* as interpreted by Ohio courts, attorneys are presumed competent and reviewing courts must refrain from second-guessing strategic, tactical decisions and presume that counsel's performance falls within a wide range of reasonable legal assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶75}  To succeed on an ineffective-assistance-of-counsel claim, an appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance deprived the appellant of a fair trial. *Strickland* at 687. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶76}  "To warrant reversal, '(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

23

sufficient to undermine confidence in the outcome.' " *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.

**{¶77}** Warth fails to cite to any part of the record where he believes that counsel should have objected. Indeed, his entire argument is one sentence: "Should this Court determine that Warth waived any of his claimed errors, or waived all but plain error, due to his counsel's failure to object, Warth asserts that he was denied the effective assistance of counsel."

**{¶78}** App.R. 12(A)(2) provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) provides that an appellant must provide an argument and "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

**{¶79}** This court declines to address Warth's argument. *See State v. Covington*, 1st Dist. Hamilton No. C-190731, 2021-Ohio-2907, ¶ 25. We overrule Warth's tenth assignment of error.

I. The trial court properly considered the sentencing factors under R.C. 2929.12.

**{¶80}** In his twelfth assignment of error, Warth argues that the trial court erred by imposing a prison sentence that was not supported by the sentencing factors in R.C. 2929.12, and that all of the factors under R.C. 2929.12(E) were present.

**{¶81}** We review criminal sentences under R.C. 2953.08(G)(2), which allows appellate courts to increase, reduce, or otherwise modify a sentence, or to vacate the sentence and remand the matter for resentencing if it clearly and convincingly finds

that either the record does not support the sentencing court's findings under relevant statutory provisions, or the sentence is otherwise contrary to law. *State v. Conley*, 1st Dist. Hamilton No. C-200144, 2021-Ohio-837, ¶ 20.

**{¶82}** But "R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12 because * * * R.C. 2929.11 and 2929.12 are not among the statutes listed in the provision." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 31. A trial court's findings under R.C. 2929.11 and 2929.12 are not reviewable under R.C. 2953.08(G)(2)(b) because "an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 34.

**{¶83}** R.C. 2929.11 and 2929.12 are not fact-finding statutes and, absent an affirmative demonstration to the contrary, we will presume that the trial court considered them. *State v. Mimes*, 1st Dist. Hamilton No. C-200122, 2021-Ohio-2494, ¶ 9.

**{¶84}** The trial court adequately considered the overriding principles and purposes of felony sentencing under R.C. 2929.11 and 2929.12. We overrule Warth's twelfth assignment of error.

### J.   Indefinite sentencing is constitutional in Ohio.

**{¶85}** In his thirteenth assignment of error, Warth suggests that the indefinite sentence imposed was unconstitutional. But the Supreme Court of Ohio recently determined that the indefinite sentencing scheme under the Reagan Tokes Law is constitutional. *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535. Therefore, we

25

overrule Warth's thirteenth assignment of error.

### K. The two counts of felonious assault should have been merged.

**{¶86}** In his eleventh assignment of error, Warth argues that the trial court violated the principles of double jeopardy by failing to merge the counts of felonious assault. Warth notes that the court announced that counts one and two were to be merged, but the sentencing entry does not reflect that. The state concedes this error. We sustain Warth's eleventh assignment of error and remand the cause to the trial court to merge counts one and two.

### L. The doctrine of cumulative error does not apply.

**{¶87}** In his final assignment of error, Warth argues that he was denied the right to a fair trial under the cumulative effect of the errors committed at trial. "Under the doctrine of cumulative error, a conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial." *State v. Cook*, 1st Dist. Hamilton No. C-140118, 2014-Ohio-4900, ¶ 15.

**{¶88}** Because we have determined that the trial court's only error was the failure to merge Warth's counts—which happened after the trial concluded—there was no cumulative error and Warth was afforded a fair trial. Thus, we overrule Warth's fourteenth assignment of error.

### III. Conclusion

**{¶89}** With the exception of the eleventh assignment of error, we overrule Warth's assignments of error. We remand the cause to the trial court to merge counts one and two for sentencing. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.