# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.   C-240523
                                                   TRIAL NO.    B-2305996-A

    Plaintiff-Appellee,           :

vs.                                     :

TONY THACKER,                           :          *JUDGMENT ENTRY*

    Defendant-Appellant.          :

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 9/24/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Thacker*, 2025-Ohio-4446.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240523 |
| | | TRIAL NO. | B-2305996-A |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| TONY THACKER, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 24, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

Arenstein & Gallagher, and *William R. Gallagher*, for Defendant-Appellant.

**NESTOR, Judge.**

{¶1}    During the burglary of a Cincinnati smoke shop, defendant-appellant (and employee of the smoke shop) Tony Thacker arose from his temporary dwelling in the back of the store and fired numerous shots at the assailants. As the burglars retreated, Thacker ran to the front of the store and fired shots at their vehicle as they drove away.

{¶2}    With these shots, Thacker injured two of the fleeing suspects. The jury later found Thacker guilty of two counts of felonious assault. He received an aggregate sentence of eight-to-nine years in the department of corrections. He now appeals his convictions asserting two assignments of error. Because Thacker's actions extended beyond what can be seen as self-defense, and because the trial court did not misstate the law on self-defense, we overrule both of his assignments of error and affirm the judgment of the trial court.

## I.  Factual and Procedural History

{¶3}    On October 20, 2023, two cars arrived at the VIP Smoke Shop ("VIP") around 1:30 a.m., well after closing. Five individuals emerged from the cars. One of them threw a concrete block through VIP's front door. Unbeknownst to the burglars, Thacker, who had twice before been present at VIP for similar crimes, was living in the back of the shop.

{¶4}    In August 2021, during a shift at VIP, an individual cut or stabbed Thacker during an aggravated robbery. In September 2023, a month before the events in this case, individuals attempted to break into VIP and Thacker fired two shots towards them, causing them to run away.

{¶5}    Here, as the group rushed into the store, Thacker heard the break-in, exited from his "bedroom" at the back of the store and began firing at the intruders.

3

The entire group elected to exit as quickly as possible. The burglar closest to Thacker was shot and stumbled to the ground, where he died. The rest of the crew ran outside, entered their vehicles, and began driving away.

{¶6} Thacker ran to the front door and fired an additional six shots at the last car as it drove away. He testified at trial that after the final shots, he called his brother to explain that he believed he had just killed a burglar at the shop. He also stated that he did not call 911 and acknowledged that he did not believe he was allowed to possess a firearm.[1] When the police arrived at VIP, Thacker's brother Malachi was present, Thacker was gone, and the police located the firearm in Thacker's living quarters.

{¶7} A.C., one of the injured burglars, testified that he and his friends planned to break into VIP and steal vapes. He stated that he was hit by one of Thacker's initial shots, inside of VIP, but was still able to run and jump into the backseat of the vehicle he arrived in. Once in the vehicle, a second bullet struck A.C. as the group attempted to flee.

{¶8} Later, during the morning of the attempted robbery, the Delhi Police Department contacted Thacker, and his girlfriend dropped him off at the station. Thacker testified that he cooperated while the police interviewed him. Thacker explained that he retrieved a firearm and shot at the burglars because he wanted to protect himself and his girlfriend, who was staying at VIP with him. He also described the past break-ins and how he had been stabbed in a previous theft. Thacker believed the burglars were armed but admitted that he did not observe any weapons. Thacker testified that he ran to the door to see what kind of car they were in after they fled. At this point, he heard one of them yell and saw the car's brake lights flash. Admitted

---

[1] *See State v. Thacker,* 2024-Ohio-5835, *appeal accepted*, 2025-Ohio-705, and *held for decision in State v. Striblin,* 2024-Ohio-4713 (R.C. 2923.13(A)(3) held unconstitutional as applied).

video shows that the intruders tried to immediately drive away and none of the group attempted to exit from the last car to leave. Despite the apparent flight, Thacker began firing again. He asserts that he believed they were going to return and re-enter the shop. He fired six more shots.

{¶9} During closing arguments Thacker's counsel argued that this was not a situation where "he tracked down" the burglars or sought revenge. He argued instead that all of Thacker's shots, including the final six, were one incident that constituted self-defense. The prosecution argued that although Thacker clearly did not create the situation, and had no duty to retreat, he was not permitted to advance on the burglars as they fled. As the prosecution explained, Thacker had already thwarted the attack and had no reason to run to the front of the store and fire the final shots.

{¶10} During closing arguments, the prosecution referenced the standard for self-defense. The prosecutor made several statements, all encompassing the idea that "no duty to retreat does not mean permission to advance." The court then instructed the jury as to the standard for self-defense. Ultimately, the jury found Thacker guilty of two counts of felonious assault. Thacker received an aggregate sentence of eight-to-nine years in the department of corrections. He now appeals, asserting two assignments of error.

## II. Analysis

### A. First Assignment of Error

{¶11} In his first assignment of error, Thacker asserts that the trial court committed plain error when it allowed the prosecutor to misstate the law on self-defense during closing arguments. He claims that in doing so, the trial court denied him his constitutional guarantees of due process and a fair trial.

{¶12} Where there is a failure to object to comments made at trial that are

5

claimed to be improper, a defendant waives all issues but plain error on appeal. *State v. Hayes*, 2020-Ohio-5322, ¶ 41 (1st Dist.). To prevail under the plain-error doctrine, Thacker must show "that an error occurred, that the error was obvious, and that there is a reasonable *probability* that the error resulted in prejudice, meaning that the error affected the outcome of the trial." (Emphasis in original.) *State v. Mounts*, 2023-Ohio-3861, ¶ 49 (1st Dist.). The test for prosecutorial misconduct mandates reversal where "the prosecutor's remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused." *Hayes* at ¶ 42. The focus of the analysis is "the fairness of the trial, not the culpability of the prosecutor." *Id.*

{¶13} Here, the prosecutor stated,

No duty to retreat is not permission to advance. No duty to retreat does not mean that you get to run towards the person, and that's exactly what Mr. Thacker did. He has no duty to retreat and run into the back or run out the back of his home, but he does not have permission to advance on them. So when he runs to the front of the store, he's not defending himself[,] he's advancing on the intruders.

The prosecutor's "advancement" argument repeatedly mischaracterized (and similarly misstated) Ohio's self-defense law. Therefore, an error clearly occurred. However, there was no reasonable probability that this error affected the outcome of the trial.

{¶14} The trial court immediately addressed the issue by instructing the jury that statements made during closing arguments by counsel were not evidence and that the jurors were the sole judges of the facts. The court also properly instructed the jury regarding self-defense, including the State's burden and the presumption in favor of Thacker in this case, and then defined many terms for the jury to remedy any confusion before deliberations.

6

{¶15} Thacker argues that the prosecutor's statements were "designed to mislead the jury." We disagree. The prosecutor's arguments, while misstatements, were confusing attempts to argue that no duty to retreat does not authorize a defendant to re-initiate an affray. Such a proposition is well-founded in Ohio law.

{¶16} Self-defense is not without limits. Said another way, "[o]nce the 'person against whom the defensive force is used' is no longer either on the defendant's property or a threat, *or when the defendant has succeeded in 'expelling' the other person*, then the privilege under which the defendant operated is over." (Emphasis added.) (Internal citations omitted.) *State v. Warth*, 2023-Ohio-3641, ¶ 39 (1st Dist.). The prosecutor's statements, although imprecise, attempted to convey this idea.

{¶17} Because the trial court properly instructed on self-defense and based on our understanding of the prosecutor's arguments, we find no prosecutorial misconduct, and therefore no plain error. Accordingly, we overrule Thacker's first assignment of error.

### B. Second Assignment of Error

{¶18} In his second assignment of error, Thacker asserts that his convictions were against the manifest weight of the evidence. We review a challenge to a self-defense determination under a manifest weight of the evidence standard. *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "A manifest weight review requires this court to sit as the "thirteenth juror," review the entire record, consider witness credibility, and determine if the fact finder "clearly lost its way in resolving conflicts in the evidence and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Nichols*, 2025-Ohio-1515, ¶ 18 (1st Dist.). Convictions may only be reversed under a manifest-weight review in "exceptional cases where the evidence weighs heavily against the conviction." *State v. Harper*, 2025-Ohio-2059, ¶

18 (1st Dist.).

{¶19} The defendant bears the initial burden to provide sufficient evidence that his use of force was in self-defense. *Id*. at ¶ 20. There is no dispute here as to whether this burden was met. When the defendant produces such evidence, the burden shifts to the State to refute his claim. *Id*. at ¶ 21. The State must disprove any element of the self-defense claim beyond a reasonable doubt. *Id*. Without specifically detailing each element of self-defense, Thacker argues that his subjective belief that he remained under attack alone warranted an acquittal. Thacker's subjective belief alone does not mean he prevails on self-defense. To succeed on a self-defense claim, a defendant's belief that he faced imminent danger of death or great bodily harm must also be *objectively* reasonable. (Emphasis added.) *State v. Clark*, 2024-Ohio-2921, ¶ 23 (1st Dist.). "The State may disprove self-defense by demonstrating that the defendant's belief was not objectively reasonable or that he did not have an honest subjective belief that he faced imminent death or great bodily harm." *Warth*, 2023-Ohio-3641, ¶ 43 (1st Dist.).

{¶20} Thacker's initial shots caused the group of burglars to immediately flee. None of them turned around or otherwise tried to re-enter or reapproach the store. Within two seconds of Thacker reaching the front of VIP, the green Kia Soul, the last car to leave, was pulling away. Thacker leaned over the counter and fired six more shots. His argument that he believed the intruders might re-enter the store is not supported by the record. The video clearly shows all of the burglars running, quickly getting into the cars, and *immediately* driving away. At the point where all the burglars were out of the store and no longer a threat, there was no need to shoot.

{¶21} Similar to the circumstances in *Warth*, Thacker's initial use of self-defense is not the issue. It is the fact that Thacker voluntarily re-entered the dispute

by pursuing the burglars as they fled. *See Warth* at ¶ 40. Thacker's decision to follow the burglars as they were driving away from the property escalated the situation. Once the threat had been expelled, the use of force was no longer objectively reasonable.

{¶22} Moreover, the video shows Thacker on the phone saying, "[I]f I just threw his body in the river do you think they would say anything?" before he flees the scene. Both his statement and his flight evidenced guilt. Thus, after reviewing the entire record, we hold that this case is not an exceptional case where the evidence weighs heavily against Thacker's convictions. Accordingly, we overrule his second assignment of error.

### III. Conclusion

{¶23} Based on the foregoing, we overrule both of Thacker's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

ZAYAS, P.J., and CROUSE, J., concur.