[Cite as *State v. French*, 2024-Ohio-1256.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230275 |
| | | TRIAL NO. B-2202579 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| KENDRA FRENCH, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 3, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brian A. Smith Law Firm, LLC,* and *Brian A. Smith*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Defendant-appellant Kendra French appeals from the trial court's judgment convicting her, after a bench trial, of felonious assault.  French argues that her conviction was against the manifest weight of the evidence, contending that the evidence demonstrated that she had acted in self-defense.  She further argues that the trial court's exclusion of a witness's prior criminal history was an abuse of discretion and a violation of her rights to due process, a fair trial, and to confront and cross-examine witnesses under the United States and Ohio Constitutions.

{¶2}    Because French's belief of imminent bodily harm was not objectively reasonable, the state disproved self-defense beyond a reasonable doubt, and her conviction was therefore not against the manifest weight of the evidence.  And because French's counsel did not actually impeach the witness regarding his prior criminal history, the trial court properly excluded this testimony.  Accordingly, we overrule French's assignments of error and affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶3}    French was charged with two counts of felonious assault in violation of R.C. 2903.3(A)(1) and (2) in connection with a May 28, 2022 shooting that resulted in injuries to French's neighbor, F.H.  The case proceeded to a bench trial on March 14, 2023.

{¶4}    At the bench trial, F.H. testified that she lived at an apartment complex on Losantiville Avenue and that French lived in the unit below her.  The Losantiville apartment complex had four units in total, with two units on each floor.  There was an orange-tiled landing at the entrance, with a set of stairs that led up to the first set of

apartment units on the right side and a door to a set of stairs leading down to the basement and garage on the left side.

{¶5} F.H. testified that she and French had a contentious relationship and that she frequently asked French to keep the noise down to no avail. On the evening of May 28, 2022, F.H. and her boyfriend, Anthony Jackson, pulled into the driveway of the apartment complex after getting groceries and they saw that French and her friend, Warren Bratcher, were seated on a ledge near the garage. According to F.H., Jackson and Bratcher began arguing first, and then French squared up to fight F.H. At that point, all four parties engaged in a physical altercation.

{¶6} After the fight broke up, F.H. and Jackson dropped off their groceries to F.H.'s apartment. F.H. testified that when she and Jackson went back downstairs to get the rest of the groceries, French shot her in the face as F.H. opened the door that led to the basement and garage.

{¶7} F.H. testified that she was transported to the hospital after Jackson called 911, where she was diagnosed with maxillary and mandible fractures. She also testified that she did not initiate the first altercation with French and that she did not have any weapons that night. On cross-examination, she admitted that she provided a statement at the hospital that she heard a knock on her door and was shot when she answered, which contradicted her testimony at trial.

{¶8} Jackson also testified at trial. He testified that when he and F.H. pulled into the driveway, French said something that led to the first physical altercation between French and F.H. According to Jackson, he tried to break them up, but Bratcher hit him, and he fell to the ground. Jackson also testified that F.H. was shot at the bottom of the basement stairs after he had gone back downstairs with her to get

more groceries. But in an interview with the police, Jackson stated they had barely gotten the key in the front door when F.H. was shot, which seemingly implied they were upstairs by F.H.'s apartment. In his testimony, Jackson also denied having weapons that day, either on his person or in F.H.'s apartment.

{¶9} On cross-examination, French's counsel tried to elicit testimony from Jackson regarding a prior conviction for domestic violence. Though Jackson was charged with domestic violence, he clarified that he was not sentenced to prison and that he was not convicted of a crime punishable by more than a year. The state objected to this testimony, and the trial court struck Jackson's answer, because Jackson's conviction was not a felony or a crime of dishonesty in the last ten years. Following the state's objection, there were no further questions on the issue by French's counsel.

{¶10} Detective Jacquelyn Metz also testified at trial. Metz indicated that she interviewed French, French's brother, and Jackson at the crime scene, which she also canvassed. On the orange-tiled landing, she found a shell casing and a human tooth, and upstairs she found human blood and teeth. Though not qualified as an expert witness, she testified that, based on her experience, she believed the shell casing came from a handgun.

{¶11} Detective Charles Zopfi was an additional witness for the state at trial. Zopfi testified that he interviewed F.H. at the hospital and that she identified French as the person who had shot her. Per Zopfi's testimony, he also interviewed French in the early hours of the morning on May 29, 2022. As Zopfi told the court, according to French in this interview, she shot F.H. when F.H. lunged down the stairs at French. Zopfi relayed that French did not recall seeing a weapon on F.H., but that French was

carrying her gun with her throughout the altercation. According to Zopfi, French also told him that she had a history of disagreements with F.H., that she had a license to carry a concealed weapon, and that she believed Jackson had a gun on the night of the shooting.

{¶12} When the trial court took a recess during Zopfi's testimony, French's counsel observed Zopfi and Officer Christian Russ discussing the case, ostensibly in violation of a court order separating the witnesses. Zopfi averred that it was a lapse in judgment and no relevant information was exchanged. At the request of defense counsel, the trial court admonished the witnesses not to speak to each other.

{¶13} On cross-examination, Zopfi denied that the lack of physical evidence in the basement was significant. Zopfi clarified that, according to F.H., she was coming up from the basement and going onto the orange-tiled landing when she was shot. Based on this, Zopfi contended it would not make sense to find blood stains in the basement. Zopfi also acknowledged that he interviewed F.H. again two days after the incident without recording the interview, turning on his body-worn camera, or taking notes.

{¶14} Russ testified at trial that on the evening of the shooting, he found French sitting on the front curb of the apartment complex with a bloody nose. According to Russ, French said, "I am the one that shot her." Russ testified that he and another officer retrieved French's gun, which was empty. They then placed French in custody.

{¶15} At the close of the state's case, French moved for an acquittal under Crim.R. 29. The trial court denied this motion.

{¶16} French testified at trial. She testified that she and F.H. often had disagreements. French further testified that she frequently heard F.H. and Jackson getting into verbal and physical altercations. She believed that Jackson had a gun in F.H.'s apartment, although she had never seen it.

{¶17} According to French, it was Jackson who initiated the first altercation on the night of shooting. She maintained that F.H. made physical contact with her first by pulling her hair. French contended that Bratcher broke up the first fight. French further testified that her gun was in her waistband the whole time and that she did not pull out her gun during the first altercation because she did not feel threatened at that point.

{¶18} French indicated that she and Bratcher waited outside for a few moments after the first altercation. French testified that when they went inside, F.H. lunged at her from the top of the stairs. French testified that because she thought that F.H. may have gotten a gun from Jackson, she shot F.H. as she lunged at her. According to French, this caused F.H. to fall backwards. French indicated that F.H. then bounced up and ran to her apartment. French further testified that she intended to turn herself into the police to show that she was not guilty and had acted in self-defense.

{¶19} Bratcher also testified at trial. He testified that Jackson attacked him first. He heard a shot fired, but did not see anything. He left the scene after hearing the shot. He also recalled telling French she should not have done what she did while she was being arrested.

{¶20} The following exhibits were moved into evidence at trial: surveillance videos submitted by an anonymous neighbor to the police, a recording of Jackson's

6

interview with Metz, and the body-worn camera footage of an unidentified officer on the scene that evening.

{¶21} These exhibits demonstrate a number of key facts. For example, though one of the surveillance videos was mostly obstructed by shrubbery and fencing, the other surveillance video showed two pairs of individuals fighting by the garage, with one individual falling, as Jackson had testified, and another individual having her hair pulled, as French had testified. In addition, in Jackson's interview with Metz, Jackson stated that French was trying to get her gun from the car following the first altercation, but that Bratcher stopped her. He also indicated that Bratcher and French started the fight. In the body-worn camera footage, blood splatters were visible near F.H.'s unit, but not in the basement. Additionally, an officer is seen commenting in the body-worn camera footage that a tooth and casing were found on the orange-tiled landing.

{¶22} Following the presentation of the defense case, French renewed her Crim.R. 29 motion, which the trial court denied again. The trial court found that F.H. was the initial aggressor in the first altercation, that French had time to get her gun from her car following the first altercation, that French was standing on the orange-tiled landing when the shooting occurred, and that F.H. was standing at the top of the steps above the orange-tiled landing. The trial court found that French had an honest belief that she was in danger, but that her perception of the threat from F.H. lunging at her without a visible weapon was not reasonable. Further, the trial court found that French's use of force was disproportionate to the danger she perceived.

{¶23} The trial court ultimately found French guilty as charged and sentenced her to five-to-six years of incarceration. She now appeals.

### Self-Defense

**{¶24}** In her first assignment of error, French argues that her conviction was against the manifest weight of the evidence, because, she contends, the evidence showed she acted in self-defense.

**{¶25}** "[I]n evaluating a manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt." *State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 12. To disprove self-defense, the state must establish "beyond a reasonable doubt that the defendant: (1) was at fault in creating the situation giving rise to the affray; (2) did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm; or (3) violated a duty to retreat or avoid danger." *Id.* at ¶ 11.

**{¶26}** "The test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm." *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 29.

**{¶27}** Here, the trial court found that French subjectively had an honest belief of imminent bodily harm. In reaching this conclusion, the trial court accepted French's version of events. It agreed with French that F.H. was the initial aggressor and that F.H. lunged at her from the top of the landing. But it did not find that French's honest belief was objectively reasonable.

8

**{¶28}** French argues that it was objectively reasonable, because it was plausible that F.H. had a gun in light of Jackson's prior criminal history and that F.H. could have reached for that gun when she lunged at French. She further argues that Jackson and F.H. were not credible, that it was illogical that there were no bloodstains in the basement, and that her gun was on her person the entire evening. She also takes issue with Zopfi and Russ's discussion of the case in violation of the trial court order requiring the separation of witnesses.

**{¶29}** The trial court found that French's use of a gun was disproportionate to any apparent danger perceived from F.H. lunging down the stairs. F.H. and Jackson denied having weapons that day. Though French challenges their credibility, "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 52. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* Therefore, we defer to the trial court's finding that F.H. was not armed and that French's use of a gun was disproportionate.

**{¶30}** French's contention that the lack of physical evidence in the basement disproves F.H.'s version of events is rebutted by Zopfi's evidence. Zopfi clarified that F.H. did not mean she was in the basement when she was shot. Rather, F.H. was by the orange-tiled landing, and it would therefore make sense that physical evidence was found in the landing and not in the basement.

**{¶31}** French also fails to explain how the conversation between Russ and Zopfi affected the outcome of her case. Although French argues that this impacted their credibility, the court credited her version of events, not theirs. Additionally, the

9

trial court admonished Russ and Zopfi to stop talking to each other and confirmed that nothing of consequence was discussed.

{¶32} Thus, the trial court did not lose its way in finding that the state disproved that French had reasonable grounds to believe she was in imminent danger of bodily harm. We therefore overrule French's first assignment of error.

### *Evid.R. 609*

{¶33} In her second assignment of error, French argues that the trial court abused its discretion in excluding evidence of Jackson's prior criminal history.

{¶34} "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *State v. Terry*, 1st Dist. Hamilton No. C-230049, 2023-Ohio-3131, ¶ 6. Evid.R. 609 governs impeachment of a witness's credibility through the admission of evidence of a prior criminal conviction, which is either a crime of dishonesty or a crime that is punishable by death or more than one year of imprisonment. Evid.R. 609(A). The conviction may be proven only by the witness's testimony or by public record shown to the witness during his or her examination. Evid.R. 609(F).

{¶35} Here, however, French's counsel failed to actually impeach Jackson with a prior conviction. The following exchange occurred during Jackson's cross-examination:

FRENCH'S COUNSEL: Have you been convicted of a crime punishable by more than one year in prison in the last ten years?

JACKSON: Is you talking about like domestic violence or something like that? Yeah.

FRENCH'S COUNSEL: Yes.

JACKSON: But I haven't been to prison, no.

FRENCH'S COUNSEL: Okay. What I'm asking is have you been convicted of something punishable by more than one year?

JACKSON: No.

FRENCH'S COUNSEL: And even if you didn't get a year, potentially punishable by more than a year in prison?

JACKSON: No.

* * *

STATE: Objection, Your Honor, to the relevance of any sort of prior domestic violence between [F.H.] and Anthony Jackson.

* * *

TRIAL COURT: Right. The conviction was not for a felony or a crime of dishonesty in the last ten years. It's inadmissible, so I'll strike the answer.

FRENCH'S COUNSEL: Fair enough.

{¶36} Considering Jackson's responses to French's counsel's questions, Jackson never indicated that he had in fact been convicted of the requisite crime as required by Evid.R. 609(F). While Jackson indicated he had been convicted of domestic violence, he denied having gone to prison at all for this crime and further denied having any criminal conviction whatsoever for which he faced more than a year in prison. Following Jackson's answers, French's counsel did not use a public record of the conviction to impeach Jackson as Evid.R. 609(F) contemplates. Instead, when the state objected, and the trial court struck Jackson's answer, French's counsel agreed to move on. Thus, because Jackson was never properly impeached under either of the

methods for proving a prior conviction under Evid.R. 609(F), the trial court did not abuse its discretion in excluding evidence of Jackson's criminal history.

{¶37} Accordingly, we overrule French's second assignment of error.

### *Conclusion*

{¶38} For the reasons set forth above, the trial court's finding that French's honest belief of imminent bodily harm was objectively unreasonable was not against the manifest weight of the evidence. Further, because French's counsel did not actually impeach Jackson under Evid.R. 609, the trial court did not abuse its discretion in excluding evidence of Jackson's prior conviction. Accordingly, French's assignments of error are overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur**.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.