[Cite as *State v. Martin*, 2024-Ohio-2172.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                   No. 113250

    v.                                    :

BEN MARTIN,                             :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664130-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Paul and Kenan Mack, Assistant Prosecuting Attorneys, *for appellee*.

Susan J. Moran, *for appellant*.

---

SEAN C. GALLAGHER, J.:

{¶ 1} Ben Martin was convicted for the murder of Sean Wilkins, which resulted in a life term of imprisonment with the possibility of parole after 21 years. Upon our review of the arguments presented and in consideration of the entire

record, we cannot conclude that his conviction is against the weight of the evidence. For the following reasons, we affirm.

{¶ 2} Martin and Wilkins were acquainted. Martin was in a relationship, and had two children, with Wilkins's cousin, who had four children in all. Wilkins kept tools, a trailer, and scrap metal at his cousin's house and regularly stopped by early in the morning before he started work for the day.

{¶ 3} A couple of weeks before the murder, Martin gave Wilkins $200 to purchase THC-infused butter from a third party. Wilkins delivered a tub, which was supposed to have contained the product. Martin apparently put the tub in his freezer without checking its contents. A day before the murder, Martin opened the container and discovered it contained grease, not butter. Martin contacted Wilkins, through text messaging, demanding his money back. After an extensive back and forth, Martin threatened Wilkins, telling him they should settle their dispute through a boxing duel. At one point, Wilkins agreed to take the container back and give Martin half of the $200. Martin refused.

{¶ 4} Wilkins spent the day before his death fixing a vehicle with his brother. Around seven o'clock in the evening, the night before his murder, they parted ways to go home. Wilkins's girlfriend testified that he was at home the evening before his murder and did not leave until the early morning when Wilkins's brother picked him up to begin their day of work.

{¶ 5} Around five o'clock the next morning, Wilkins and his brother went to the cousin's home to pick up some tools he had left on the porch. Wilkins also

intended to leave $200 to settle the disagreement with Martin. According to Wilkins's brother, he intended to leave the money in the side window of the house after finding the front door locked. It was when Wilkins was standing by that window that Martin shot Wilkins in the back from the roof of the house, which was accessible through a bedroom window.

{¶ 6} According to Martin, his testimony being the only evidence presented in his defense, when he and Wilkins talked on the phone the day before, Wilkins said he was going to kill Martin after Martin suggested that they resort to fighting to resolve the dispute. Wilkins's cousin supposedly told Martin to take that threat seriously, but why that was so has never been explained. Later in the afternoon, Martin drove around to try and find Wilkins in an effort to ease the tension. At one point, Martin went to an area where an unrelated drive-by shooting occurred. Martin's friend was killed in that shooting. There is no evidence identifying the shooter or the motive, but Martin believed that he was the intended target, claiming to have been grazed by two or three bullets on his fingers and ankle. When officers interviewed Martin immediately after Wilkins's murder, Martin showed the officers what they described as being minor scratches that did not appear to be bullet wounds. Martin believed that Wilkins was involved in the shooting and was chasing him the entire night in several vehicles, none of which appeared to be vehicles that Wilkins owned.

{¶ 7} Still according to Martin, after evading Wilkins's pursuit all night, he entered the cousin's house through the side window, on the alley-side of the house,

a half hour before the shooting; Wilkins's cousin told officers that Martin arrived a couple of hours before the shooting. The front door faced the main street, and the side window faced the public alley. Martin claimed he did this because he was afraid Wilkins would see him enter the front door. The window Martin used appears to be the same window where Wilkins was shot.

{¶ 8} Around six o'clock in the morning, Martin heard the dog barking, drawing his attention to a car driving in or near the public alley that runs along the side of the house. Martin believed that Wilkins was going to enter the home to harm the cousin and her children and to try to kill him. He never explained why he believed Wilkins would target his cousin or her children. According to Martin, there was no trailer or any reason for Wilkins to be near the house on the day of the murder, so to him the activity was suspicious. It was then Martin climbed on the roof behind the house overlooking the public alley. It was still dark, but he saw a figure he identified as Wilkins, standing by the window on the exterior wall abutting the public alley. Martin fired several shots at Wilkins, hitting him in the back and under the arm. Martin conceded that he did not see Wilkins with a weapon or take any steps to actually enter the house.

{¶ 9} Wilkins ran to his brother's car, and his brother drove him to the emergency room. He died during surgery.

{¶ 10} At trial, Martin claimed he acted in self-defense of himself and others in the home, arguing that Wilkins intended to kill him or harm his family after breaking into the house. The trial court, following the bench trial, concluded that

the state had disproven at least one of the elements of self-defense beyond a reasonable doubt and found Martin guilty of murder and having a weapon while under disability, with all other counts merging. The trial court also imposed two three-year terms of imprisonment on two firearm specifications attendant to the murder count and one of the merged offenses.[1] This timely appeal followed.

{¶ 11} In the sole assignment of error, Martin claims his conviction is against the weight of the evidence because his testimony conclusively established that he acted in self-defense.

{¶ 12} When evaluating a claim that a jury verdict is against the weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Jordan*, Slip Opinion No. 2023-Ohio-3800, ¶ 17. Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

---

[1] Imposing sentences on two of the firearm specifications, one of which was attendant to a merged offense, is required under the combined application of R.C. 2929.14(B)(1)(g) and *State v. Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370, 220 N.E.3d 690.

{¶ 13} In order to disprove the claim of self-defense, the state must present evidence "'beyond a reasonable doubt that the defendant: (1) was at fault in creating the situation giving rise to the affray; (2) did not have reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm; or (3) violated a duty to retreat or avoid danger.'" *State v. French*, 1st Dist. Hamilton No. C-230275, 2024-Ohio-1256, ¶ 25, quoting *State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 12. *Id.* at ¶ 11. "The test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm." *Id.*, quoting *State v. Warth*, 1st Dist. Hamilton No. C-220477, 2023-Ohio-3641, ¶ 29.

{¶ 14} The trial court, in rendering its verdict, relied on the state's evidence demonstrating that Martin did not have an objectively reasonable belief that he was in imminent danger of bodily harm. According to the court, there was no evidence that Wilkins was attempting to enter the home, or that he was even armed, and Martin could have taken other actions besides shooting Wilkins from behind as he stood in the public alley. *See, e.g., State v. Hunt*, 8th Dist. Cuyahoga No. 111892, 2023-Ohio-1977, ¶ 58 (video evidence demonstrated that the defendant shot the victim as she was running away, and therefore, the jury did not lose its way in concluding that the defendant's action was unreasonable). Martin testified that he did not know whether Wilkins had a weapon, but he just assumed he did because, according to him, he believed that Wilkins was generally armed.

{¶ 15} Martin's argument that the trier of fact lost its way in rejecting his assertion of self-defense is solely focused on his evidence to the exclusion of the state's evidence. It is well settled that "'a conviction is not against the manifest weight of the evidence simply because the [trier of fact] rejected the defendant's version of the facts and believed the testimony presented by the state.'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28; *see also State v. Kouame*, 8th Dist. Cuyahoga No. 108559, 2020-Ohio-3118, ¶ 53; *State v. Agnew*, 12th Dist. Butler No. CA2023-05-054, 2024-Ohio-874, ¶ 25, citing *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. We cannot conclude that the trier of fact lost its way.

{¶ 16} Initially, we agree that Martin's evidence, his own testimony, demonstrated an arguable basis to assert self-defense, which is why the trial court considered the question of self-defense and the state's applicable burden of proof.[2] The state, however, presented evidence that Wilkins was not armed or brandishing

_____

[2] At oral argument, Martin referenced *State v. Palmer*, Slip Opinion No. 2024-Ohio-539, in support of his manifest-weight challenge. *Palmer* focused on the question whether the appellate court erred in affirming the trial court's decision to omit the self-defense jury instruction at trial, a question not implicated by the procedural history of this appeal. *Id*. at ¶ 1. *Palmer* has no bearing on appellate review of the weight of the evidence in support of the self-defense claim. *Id*. at ¶ 22 ("[T]he trial court's attitude was unreasonable because the court looked at the persuasiveness of the evidence presented rather than the adequacy of the evidence presented."). *Palmer* thus clarified that the question whether to give the jury instruction must be made solely in consideration of the adequacy of the evidence presented and "not its persuasiveness," which is the sole issue in a manifest-weight challenge. *See id*. at ¶ 21. *Palmer* is not applicable to the sole argument presented.

a firearm at the time of the murder, was not actively attempting to enter his cousin's house, and had his back toward Martin when Martin began shooting from a concealed position on the roof of the house. *See, e.g., State v. Azali*, 8th Dist. Cuyahoga No. 112299, 2023-Ohio-4643, ¶ 55-58 (defendant's claim of self-defense was not credible because the evidence showed the victim was shot in the back of the head); *see also State v. Nicholson*, Slip Opinion No. 2024-Ohio-604, ¶ 331 (the evidence demonstrating that the victims were shot in the back disproved the defendant's theory of self-defense). Although there are some inconsistencies in the state's evidence, none of the inconsistencies rise to such a level as to impact the overwhelming evidence of Martin's guilt.

{¶ 17} The only evidence supporting the imminent-danger component of the self-defense claim, i.e., that Wilkins intended to kill Martin, came from Martin's self-serving testimony and statements to police officers. The trial court, sitting as the factfinder, did not lose its way. Martin's subjective belief that Wilkins intended to do harm, a belief that was not supported with any other evidence, was not credible. The evidence presented by the state demonstrated that Martin killed an unarmed man who was standing in the public alley by shooting him in the back from a concealed position. Although Wilkins may have been near the window, Martin did not claim that he was attempting to break into the building at the time of the shooting. In short, the trier of fact was free to reject Martin's version of events and he has not demonstrated that in resolving the credibility of the witnesses, the trier of fact clearly lost its way in finding Martin guilty of murder.

**{¶ 18}** Martin's conviction for murder along with the two attendant firearm specifications and the resulting life term of imprisonment with the possibility of parole after 21 years is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR