[Cite as *State v. Miles*, 2024-Ohio-5321.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                            No. 113645

v.                                      :

JOSEPH MILES,                           :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 7, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683494-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sean Drake and Brittny M. Fletcher, Assistant Prosecuting Attorneys, *for appellee.*

Friedman, Gilbert & Gerhardstein, Marcus Sidoti, and Alex Ugolini, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant, Joseph Miles ("Miles"), challenges his aggravated assault and criminal damaging convictions, which were rendered after a bench trial. After a thorough review of the facts and pertinent law, we affirm.

{¶ 2} In August 2023, Miles was indicted on one count of felonious assault with a deadly weapon (a motor vehicle) and one count of criminal damaging or endangering. Prior to trial, Miles submitted a notice of his intent to pursue a claim of self-defense at trial. In his sole assignment of error, Miles contends that the trial court erred in not finding that he acted in self-defense and, therefore, contends that his convictions are against the manifest weight of the evidence.

**Facts as adduced at trial**

{¶ 3} The within incident can best be described as a road-rage incident that occurred between Miles and the victim, Jacob Smith ("Smith"), while the two were driving in separate vehicles southbound on Interstate 271 in Oakwood Village. The State presented four witnesses: victim Smith, the investigating Officer Justin Herrera, and two eyewitnesses — Victoria Kamsingh ("Kamsingh") and Tyler Mintz ("Mintz"). For the defense's case, Miles testified and presented his sister, Darlene Montelone, as a witness.

{¶ 4} At the time of the incident, victim Smith was driving a Honda Civic and Miles was driving a Dodge Ram pickup truck. The southbound travel of Interstate 271 was three lanes at the point where Miles and Smith encountered each other. Victim Smith was in the left lane, Miles was in the middle lane, and eyewitness

Kamsingh was in the right lane. Kamsingh was driving a Tesla vehicle with front and rear outside cameras that automatically recorded her surroundings. Eyewitness Mintz was driving in the left lane behind Smith.

{¶ 5} Victim Smith testified that while he was driving, Miles drove so that the two were side by side and he looked over at Miles and saw that Miles appeared to be angry and yelling at him. Smith was not sure what he had done to anger Miles, and he (Smith) laughed at him and made an obscene gesture to him. At that point, Miles drove into Smith's lane, momentarily forcing Smith onto the shoulder. Eyewitnesses Kamsingh and Mintz confirmed that they saw Miles drive into Smith's lane, forcing Smith onto the shoulder area of the highway.

{¶ 6} Smith testified that he again gestured to Miles, this time pointing to his passenger side-view mirror, which was broken. The mirror was broken prior to this incident, and Smith testified that he gestured to it as if to say, "whatever, dude," he was not concerned about his car sustaining further damage. Smith continued to laugh at Miles.

{¶ 7} After momentarily being forced onto the shoulder, Smith got back in the left lane and continued driving. Miles was still in the middle lane and had slowed down. Smith sped up and switched lanes to get in front of Miles. Smith then applied his brake a few times ("brake checked") simply to "F" with Miles. Miles then drove his vehicle into the back of Smith's vehicle, "ramming" the vehicle until it spun out — going right in front of a semitruck — and hit a guardrail. Miles continued driving and never stopped.

{¶ 8} Eyewitnesses Kamsingh and Mintz saw this portion of the incident as well. The eyewitnesses described the incident as "shocking" and "scary." Mintz wondered to himself, "[D]id I see that correctly?" He found it incredulous that Miles kept driving "just like nothing happened." Mintz was able to get a picture of Miles's license plate, and then he called the police. Kamsingh also called the police and gave them the recordings from her vehicle; the videos were played at trial and admitted into evidence. Although both eyewitnesses saw Miles's vehicle force Smith's vehicle onto the shoulder, they did not see anything prior to that which may have spurred the hostility between Smith and Miles; they also never saw Smith gesturing.

{¶ 9} The investigating officer, Herrera, arrived on the scene. In describing the incident, Smith did not tell the officer that he had brake checked Miles. The police were able to identify Miles as the perpetrator and learned that he lived in Cuyahoga Falls. The Oakwood Village police contacted the Cuyahoga Falls police and asked them to contact Miles.

{¶ 10} The Cuyahoga Falls police went to Miles's residence and instructed him to call the Oakwood Village police, which Miles did. Miles initially claimed that he was not involved in an accident. After being informed that he was a suspect in a vehicular assault, Miles told the police that he had been brake checked by Smith and that Smith was reaching for what he believed was a gun. The evidence established that Miles did not make any calls to the police to report the brake checking or fear for his safety.

{¶ 11} At trial, Miles testified that he was attempting to move into the left lane and did not see Smith's vehicle, because it was in his blind spot. Miles explained that the truck he was driving, a "full-size crew cab" 3500 Dodge Ram, was relatively new to him and he was still adjusting to its blind spots. Further, he was unable to rely on his rearview mirror because he had a "bulkhead" on the back of the truck; a bulkhead is a toolbox with a guard to protect the back window.

{¶ 12} According to Miles, when he realized that he was moving over into Smith's lane and was about to hit him, he immediately moved back into his lane and mouthed an apology to Smith. He testified that Smith got mad at him, however, and Smith mouthed something to him, which he could lip-read was a threat. Miles explained that he is hard of hearing and therefore has learned to lip-read well. Miles further testified that he saw Smith reach into his center console and retrieve a gun — a detail he admitted he never told the police (he only told the police he believed Smith was reaching for a gun) because they did not ask, and he was going to wait to disclose that until he got legal counsel.

{¶ 13} According to Miles, when Smith got in front of him and brake checked him, cars were on either side of him and there was nowhere for him to move. Fearing for his own safety, he "pushed" Smith "out of the way." Miles testified that he and Smith were approaching traffic in front of the semitruck and he tried to stop, while Smith "turned" and he did not see where Smith went. Miles testified that he just continued driving to get home safely because he was afraid Smith was going to get

out of his car and shoot him. Miles testified that it was never his intent to physically harm Smith or damage his property.

{¶ 14} Upon being shown the video recording of that portion of the incident, Miles admitted that the left lane was clear when Smith got in front of him and he could have simply moved over. Miles denied having anger issues, but testified that after this incident someone suggested to him that he complete an anger management program, and he did.

{¶ 15} Miles's sister, Darlene Montelone, testified that she was on the phone with Miles during the incident. She testified that Miles told her that another driver was yelling at him and "flipping" him off. Miles told her that the driver was telling Miles to pull over and that he was going to kill him. Miles told Montelone that the irate driver had a gun. According to Montelone, the call with her brother then "cut out" and when they reconnected, Miles told her that he was concerned about his safety and was going straight home.

**Verdict and sentence**

{¶ 16} On this testimony and evidence, the trial court found that the State proved that self-defense did not apply. The court found Miles guilty of the lesser-included offense of felonious assault, that being aggravated assault, as well as criminal damaging as indicted. The court sentenced Miles to one year of community-control sanctions on both counts, to run concurrently. Miles now challenges his convictions as being against the manifest weight of the evidence.

**Law and analysis**

{¶ 17} When evaluating a claim that a verdict is against the weight of the evidence, we "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Reversing a conviction based upon the weight of the evidence occurs "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 18} In *State v. Messenger*, 2022-Ohio-4562, the Supreme Court of Ohio held that when a defendant claims self-defense the defendant "has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id.* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden," and the State must then disprove self-defense. *Id.* The defendant's burden of production is "not a heavy one and one that might even be satisfied through the [S]tate's own evidence." *Id.* at ¶ 22.

{¶ 19} The trial court here implicitly found that Miles produced legally sufficient evidence that his use of force was in self-defense, stating that, although it

was "not firmly convinced that [Smith] did in fact brandish a firearm," Smith's "gesturing to what he claimed to be a missing mirror . . . may have been construed as if he was gesturing about a firearm." However, the court went on to find "that the State of Ohio . . . met its burden . . . that self-defense is not applicable to this case."

{¶ 20} In order to disprove the claim of self-defense, the State had to present evidence beyond a reasonable doubt that Miles (1) was at fault in creating the situation giving rise to the affray; (2) did not have reasonable grounds to believe or an honest belief that he was in imminent danger of bodily harm; or (3) violated a duty to retreat or avoid danger. *State v. French*, 2024-Ohio-1256, ¶ 25 (1st Dist.). The State need only prove one of the above elements. *State v. Walker*, 2021-Ohio-2037, ¶ 13 (8th Dist.). Upon review, the State proved at least one of the three elements.

{¶ 21} The most debatable element is the first one — whether Miles was at fault in creating the situation giving rise to the incident. Although Miles testified that he accidentally began to move into Smith's lane of travel and apologized after he realized what he was doing, Smith testified that his first encounter with Miles was when he saw Miles yelling at him and then Miles forced him onto the shoulder area of the highway. On this testimony, the trial court certainly could have found that Miles was responsible for creating the situation that gave rise to the incident.

{¶ 22} However, regardless of who was responsible for creating the situation, the State proved the other two elements beyond a reasonable doubt. The second element was that Miles did not have reasonable grounds to believe or an

honest belief that he was in imminent danger of bodily harm. "The test for a bona fide belief of imminent bodily harm is both objective and subjective: whether the defendant's belief is objectively reasonable and whether the defendant subjectively had an honest belief of imminent bodily harm." *State v. Warth*, 2023-Ohio-3641, ¶ 29 (1st Dist.).

{¶ 23} As to the objective reasonableness of Miles's belief, the evidence shows that at the time he "pushed" or "rammed" Smith's vehicle, Smith was in front of him and he had the opportunity to change lanes. Given these facts, it was not objectively reasonable for Miles to "push Smith out of the way" so that he could safely get home.

{¶ 24} As to the subjective reasonableness of Miles's actions, the record demonstrates that Miles never called the police to report that he feared an irate motorist was going to shoot him. In fact, in his initial statement to the police, Miles only said that he was brake checked a few times. It was not until after the police told him that he was a suspect in a vehicular assault that Miles told the police he believed Smith was reaching for a gun. Trial was the first time Miles claimed that he actually saw a gun.

{¶ 25} Moreover, "[a] defendant claiming self-defense 'concedes that he [or she] had the purpose to commit the act, but asserts that he [or she] was justified in his actions.'" *State v. Davis*, 2021-Ohio-2311, ¶ 38 (8th Dist.), quoting *State v. Talley*, 2006-Ohio-5322, ¶ 45 (8th Dist.). Because self-defense presumes an intentional, willful use of force, "'when an individual testifies that they did not intend

to cause harm, such testimony prevents the individual from claiming self-defense.'" *Id.*, quoting *State v. Hubbard*, 2013-Ohio-2735, ¶ 54 (10th Dist.).

{¶ 26} Although Miles testified that he was scared Smith was going to shoot him, he also testified that he did not intend to physically harm Smith or damage his property. His testimony that he did not intend to physically harm Smith or damage his property negates his claim of self-defense. On this record, the State proved beyond a reasonable doubt that Miles did not have reasonable grounds to believe, or an honest belief, that he was in imminent danger of bodily harm.

{¶ 27} Regarding the third element — whether Miles violated a duty to retreat or avoid danger — as mentioned, the evidence established that Miles could have simply changed lanes and avoided the whole affray.

{¶ 28} We are reminded that "[s]elf-defense claims are generally an issue of credibility." *Walker*, 2021-Ohio-2037, at ¶ 13. Thus, the determination of whether the State disproves any of the elements of self-defense is generally left to the trier of fact to decide. *State v. Davidson-Dixon*, 2021-Ohio-1485, ¶ 36 (8th Dist.), citing *State v. Morton*, 2002-Ohio-813, ¶ 52 (8th Dist.). Having carefully reviewed the entirety of the evidence presented at trial, we cannot say the trial court lost its way or created a manifest miscarriage of justice in finding Miles guilty of aggravated assault and criminal damaging or endangering despite his claim of self-defense. The sole assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR